Argued at Pendleton October 28; affirmed December 10, 1935

## MILES *v.* CITY OF BAKER
(51 P. (2d) 1047)

*Blaine Hallock,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*Forrest L. Hubbard,* of Baker, for respondent.

CAMPBELL, C. J. This is an action for damages based on alleged breach of contract. The case was tried to the court without a jury. The court made findings and entered judgment in favor of defendant. Plaintiff appeals.

The plaintiff, a certified public accountant, on November 24, 1934, made an offer in writing to the mayor of Baker, as follows:

"I herewith submit a proposal to audit the books and accounts of Baker, Oregon, for the fiscal year 1934, for the sum of four hundred ($400)."

The board of commissioners, the governing body of the city, by motion accepted the offer of plaintiff and the mayor endorsed on the offer: "Accepted this 26th day of November, 1934."

Counsel have stipulated practically all of the facts. It is stipulated that Bert E. Harvey was mayor commissioner and Walter Scott and George W. Henry were the commissioners, and that these three men constituted the city board of commissioners, the governing body of defendant, a municipal corporation, on November 26, 1934, and continued to hold their respective offices until December 3, 1934; that on December 4, 1934, said commissioners were succeeded by the duly elected and qualified board of commissioners consisting of J. B. Messick, mayor commissioner, L. R. Martin and Walter Scott, commissioners, who held office all the times material to the facts herein; that at all of said times the defendant was acting under and exercising the powers conferred upon it by its existing charter which was duly adopted long prior to the time the matters herein took place; that on November 26, 1934, the board of commissioners, acting on the proposal made to them by plaintiff, adopted the following motion:

"Roland Miles made proposal to audit the city books for the fiscal year 1934 for $400. Moved by Commissioner Henry, that the proposal of Roland Miles be accepted. Motion was seconded by Commissioner Scott and carried."

On December 18, 1934, the board of commissioners employed one J. L. Soule to examine the city books, by the following motion:

"A motion by Commissioner Martin that the proposal of J. L. Soule to examine the books of the City of Baker including Departments 1, 2, and 3, term to cover the time from June 1st, 1934 to December 4th, 1934, $300, and any other prior six months period $250, as directed by the Mayor Commissioner, was unanimously approved."

On December 24, 1934, the then board of commissioners rescinded the action of the former board of commissioners accepting plaintiff's proposal, by adopting the following motion:

"The motion and the action of the former Board of Commissioners in hiring Roland Miles to audit the City's books for the year 1934 be rescinded, was unanimously carried."

The plaintiff did nothing in the way of carrying out his alleged contract, and on December 26, 1934, for the first time presented himself to the mayor of defendant, and advised him that he was ready to proceed with the said audit, and was thereupon informed by the mayor that he would not be allowed to proceed with the audit; that defendant refused to pay plaintiff anything on account of his proposal and acceptance thereof by the former board of commissioners.

The charter of the City of Baker was duly adopted by the people of the said city at an election long prior to the events constituting the controversy in the instant case, and has been duly filed with the librarian of the supreme court of the state of Oregon. It provides for a governing body consisting of three commissioners, one of whom shall be mayor, and that said officers shall take and be inducted into office on the

first Tuesday of December following the election at which they shall be elected. These are the only elective officers of the city. It also provides that the fiscal year shall begin December 1 and end November 30 of each year. Among the powers conferred upon the board are:

"The board shall have power from time to time to create, fill and discontinue offices and employment other than herein prescribed according to their judgment and the needs of the city, and may, by majority vote of all the members, remove any such officer or employee, except as otherwise provided for in this act; and may by resolution or otherwise prescribe, limit or change the compensation of such officers or employees."

It also provides:

"The mayor commissioner shall be the chief executive officer of the city and president of the board. * * * He shall have power to appoint experts to examine the affairs of any officer or department of the city whenever he shall deem it necessary * * *. He shall have and exercise such powers, prerogatives and authority as are conferred upon him by the board or by the general laws of the state not inconsistent with the general purposes and provisions of this chapter. * * * He shall, upon the recommendation of the commissioner of the appropriate department, appoint such heads of departments, deputies and principal assistants as may be directed by this charter or by ordinance as per section 57. He shall employ for a stipulated compensation at the beginning of each fiscal year, a certified public accountant, who shall examine at least twice a year, the books, records or reports of all officers and employees who receives or disburses city moneys, and the books, records and reports of such other officers and departments as the mayor may direct and make triplicate reports thereof, and present one each to the mayor and vice-president and file one with the clerk, such accountant shall have the un-

limited privilege of investigation to examine under oath or otherwise, all officers, clerks or otherwise of the city, and every such officer, clerk or employee shall give all required assistance and information to such accountant, and submit to him for examination such books and papers of such officers as may be required and failure to do so shall be ground for removal. The board shall provide for the payment of the services of such accountant. *   *   *''

"The mayor shall have general supervision of all other officers and affairs not now defined."

The charter further provides that the elective officers shall be the only officers of the city.

"All other persons in the service of the city, or any commission, or board thereof, are hereby declared to be employees and subject to removal by the board at any time at its pleasure and without cause, except as otherwise provided by this charter. The powers, duties and compensation of all salaried employees shall be fixed by ordinance."

It thus appears that one of the governmental functions of defendant is to appoint a certified public accountant to make an examination of the books of all of its officers that may have the collection and disbursement of any of the funds of the city. It, in fact, makes it mandatory on the mayor commissioner to select at the beginning of the fiscal year a certified public accountant to make such audit twice a year and file a report thereof in triplicate—one with the mayor, one with the vice-president, and one with the clerk.

The question presented here is: Has the outgoing board of commissioners power to enter into a contract for the auditing of the books of the city for the fiscal year that closes with its term, said audit to be made and paid for during the term of the incoming board of commissioners?

It will be observed that the contract alleged by plaintiff is very indefinite in its terms. It does not specify what "books, records and reports of all officers and employees who receive or disburse city moneys and the books, records, and reports of such other officers and departments as the mayor may direct   *   *   *''.

It is also indefinite as to the time in which the work is to be undertaken or performed. Under his contract, plaintiff claims the right to make the auditing at his own convenience. He did not offer to do the work until one month had elapsed after entering into his alleged contract, and not until after the city had employed another person and had rescinded plaintiff's contract. At the time he entered into the contract and continuing for a long time thereafter he was engaged by the SERA department of the United States government at a salary of $36 per week, but he testified that some days his position therein did not require all of his time and that he intended to make the audit of the city books at such times as he could spare from his work from the SERA.

The plaintiff, under his alleged contract, would be an employee of the city over whom the mayor would have general supervision. Plaintiff's "powers, duties and compensation" had not been "fixed by ordinance".

As a general proposition, a municipality, if not prohibited by charter, has the inherent right to have its books audited any time its governing body may deem necessary. This does not give the power to the outgoing board to bind the incoming board with the expense of such an audit unless the charter especially provides that it may.

If the work provided for in plaintiff's alleged contract is a governmental function, then the great weight of authority is to the effect that the outgoing

council could not bind its successors in such a contract. These authorities are collated by McQuillan on Municipal Corporations (2d Ed.) Vol. 3, § 1356, p. 952, and the rule is expressed therein as follows:

"Statutes and charters sometimes authorize municipal boards to make contracts which will extend beyond their own official term, and the power of the legislature in this respect is well settled. Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its sucessors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist.   *   *   *   As to contracts of employment, the decisions are not entirely harmonious. In some cases holding that particular contracts of employment must not be extended beyond the life of the board, the decision is based on the ground that the nature and character of the employment was such as to require the board to exercise supervisory control over the employee, and hence the contract was in the exercise of a governmental function. So it has been held that a contract for the employment of a keeper of a county poorhouse for a period of three years was not within the power of a board of supervisors, whose members are elected for one year only. And the employment by a board of commissioners of a physician to an office not having a term fixed by law has been held not binding on the succeeding board. While contracts if made in good faith, extending beyond the terms of the officers making them are ordinarily valid, where the nature of an office or employment is such as to require a municipal board or officer to exercise a supervisory control over the appointee, together with the power of removal, such employment or contract of employment by the board, it has been held,

is in the exercise of a governmental function, and contracts relating thereto must not be extended beyond the life of the board. Accordingly a contract of a council employing one to sprinkle streets for a year after a new council was elected and just before it assumed office was held void and contrary to public policy, and the new council might avoid the contract at its pleasure.''

We think that the alleged contract of plaintiff was to perform a governmental function under the supervisory direction of the mayor, and consequently the outgoing board of commissioners could not bind the incoming one.

The judgment will be affirmed, and it is so ordered.

BELT, BAILEY and ROSSMAN, JJ., not sitting.