Submitted on briefs June 5, affirmed August 13, petition
for rehearing denied September 9, 1952

# WICKMAN ET AL. *v.* HOUSING AUTHORITY OF PORTLAND, OREGON

247 P. 2d 630

In Banc

*Hickson, Dent & Coblens,* of Portland, for appellant.
*Dusenbery, Martin & Schwab,* of Portland, for respondent.

TOOZE, J.

This is a damage action for destruction of personal property by fire alleged to have been caused by negligence, brought by Harold J. Wickman, Selma Wickman, and Springfield Fire & Marine Insurance Company, a corporation, as plaintiffs, against Housing Authority of Portland, Oregon, a public corporation, as defendant. A general demurrer to the complaint of plaintiffs was sustained by the trial court, and, plaintiffs refusing to plead further, judgment was entered in favor of defendant, dismissing the action. Plaintiffs appeal.

Omitting formal parts, the complaint alleges:

"I.

"That at all times herein mentioned Springfield Fire & Marine Insurance Company was a Cali-

fornia corporation, duly authorized to carry on a fire insurance business in the State of Oregon.

"II.

"That at all times herein mentioned the said Springfield Fire & Marine Insurance Company insured the plaintiffs, Harold J. Wickman and Selma Wickman, against loss by fire of the property and effects under policy #D-51210 up to the amount of $1500.00.

"III.

"That the plaintiffs, Harold J. Wickman and Selma Wickman, at all times herein mentioned were husband and wife, residing together as such husband and wife in the premises known as 8002 N. Commando Street, Portland, Oregon.

"IV.

"That at all times herein mentioned the Housing Authority of Portland, Oregon, was a public corporation, organized under the laws of the State of Oregon, and particularly Section 99-2001 OCLA et seq. and having authority, pursuant to said laws, to own and manage real estate and to do all things necessary in connection therewith.

"V.

"That on or about and prior to June 22, 1951, said defendant operated and was in control of the premises at 8002 N. Commando Street, Portland, Oregon. That on or about and prior to that time said defendant had leased said premises to the plaintiff, Harold J. Wickman, who occupied said premises together with his family as a dwelling in accordance with the terms thereof.

"VI.

"That as a part of said premises and in consideration of the rent agreed to be paid by said Harold J. Wickman, the said defendant furnished a water heater, which at all times belonged to and was in control of said defendant. That said water heater was defective in that it became continually

and excessively overheated, which said condition and defects were known to defendant herein. That said defective condition existed for a long time prior to June 22, 1951.

## "VII.

"That on or about June 22, 1951, due to the defect in said water heater, a fire was caused to occur therein and said fire consumed the premises in which the plaintiffs, Harold J. Wickman and Selma Wickman, resided and also all of the household goods and furnishings belong [sic] to said Harold J. and Selma Wickman.

## "VIII.

"That pursuant to the insurance policy above described plaintiff, Springfield Fire & Marine Insurance Company, was obligated to and did pay to Harold J. Wickman and Selma Wickman the sum of $1500.00 on account of the loss sustained as the result of the fire above described.

## "IX.

"That the reasonable value of said property destroyed by the fire through the negligence and carelessness of said defendant was the sum of $5700.00. That said loss was caused solely through the negligence and carelessness of the defendant and by its failure to adequately maintain the premises above described and the fixtures attached thereto, and by its failure to make adequate repairs once the condition was brought to its attention.

## "X.

"That by reason of the said payment made by Springfield Fire & Marine Insurance Company to Harold J. Wickman and Selma Wickman plaintiff, Springfield Fire & Marine Insurance Company, became entitled to be subrogated to the rights of said plaintiffs, Harold J. Wickman and Selma Wickman, up to the extent of $1500.00 against said defendant arising from said fire and damage.

"WHEREFORE, plaintiffs demand judgment against the defendant in the sum of $5700.00, together with costs and disbursements herein."

In sustaining the demurrer, the trial court entered an order which in part is as follows:

"IT APPEARING that this Court in previous cases before it on the identical question has ruled that the Housing Authority of Portland, Oregon is immune from tort liability while engaged in the discharge of its statutory functions, and that therefore the question is stare decisis as to this Court:

"NOW, THEREFORE, by virtue of the premises aforesaid, IT IS ORDERED, ADJUDGED AND DECREED that defendant's demurrer be, and the same is, hereby sustained, and plaintiffs are hereby allowed ten days in which to plead further."

The defendant's demurrer to the complaint on the ground that it appeared upon the face thereof that the same did not state facts sufficient to constitute a cause of action was based solely upon the contention that defendant is immune from tort liability. In sustaining the demurrer, the trial judge so held. Therefore, on this appeal we are confronted by one question only; viz., is the defendant Housing Authority immune from tort liability?

It will be observed that, in its order sustaining the demurrer, the trial court mentioned previous cases before the circuit court for Multnomah county, in which that court had ruled that the Housing Authority of Portland, Oregon, is immune from tort liability while engaged in the discharge of its statutory duties.

In defendant's brief we find a list of prior trial court cases in which the precise question raised in the instant litigation was present, and in each of which cases it was determined that the Housing Authority

of Portland, Oregon, was immune from tort liability. Those cases are as follows:

1. *Abdalla v. Housing Authority of Portland,* Multnomah county circuit court, case No. 155797, decided September 13, 1944. Property damage.

2. *Gabrielli v. Housing Authority of Portland,* Multnomah county circuit court, case No. 155296, decided September 20, 1944. Personal injury.

3. *Votion v. Housing Authority of Portland,* Multnomah county circuit court, case No. 171780, decided February 1948. Personal injury.

4. *Banks, Adm'r. v. Housing Authority of Portland,* Multnomah county circuit court, case No. 184309, decided March 1949. Death claim.

5. *Dunn v. Housing Authority of Portland,* U. S. District court for Oregon, civil No. 4254, Judge McColloch, decided October 1949. Personal injury.

In plaintiffs' reply brief it is pointed out that, in the case of *Abdalla v. Housing Authority of Portland,* supra, extended consideration was given to the legal problems involved. We have procured a copy of the memorandum opinion of The Honorable James W. Crawford, circuit judge, who presided in that case. The factual situation in the Abdalla case was to all intents and purposes the same as disclosed by the complaint in this action. In his memorandum opinion in the Abdalla case, the able trial judge thoroughly discussed the legal principles involved. We believe he reached the proper conclusion, and we adopt his opinion as the opinion of the court in the matter now under consideration. That opinion follows:

"Re Abdalla et al vs. Housing Authority of Portland, Oregon, — 155-797:

"This matter was submitted to the court upon a demurrer filed against the further and separate answer and defense on the ground of insufficient facts. The complaint seeks to hold defendant liable

for negligence in connection with maintenance and operation of a heating plant in housing facilities operated at Vanport City, whereby fire destroyed certain household furnishings and personal effects owned by plaintiff. The further and separate answer to which the demurrer is addressed alleges the existence of the defendant as a public body corporate created under the housing authority law, the same being found in Sections 99-2001 to 99-2023, O.C.L.A., with amendments. The separate answer and defense alleges that defendant, pursuant to this statutory authority and by reason of war emergency, has provided and controls and operates the housing facilities in question, leasing the same at rents which persons of low income can afford and, as a part of the facility, provides and maintains a heating system. That in furnishing such accommodations and facilities defendant did so at the lowest possible rate consistent with providing decent, safe and sanitary dwelling accommodations without profit to defendant. That 'the furnishing of such accommodations and facilities for persons of low income, including the plaintiffs herein, constitutes a public and governmental use and function * * and by reason thereof defendant was acting wholly as a governmental agency * *'.

"In presenting the demurrer in argument and brief, counsel for plaintiffs raise the following points:

1. The Portland Housing Authority acts in a proprietary capacity in the Vanport City operation, and is, therefore, liable for its tort.

2. That even if found acting in a governmental capacity, Portland Housing Authority is liable in tort for damage to property.

3. That the act of creation expressly subjects Portland Housing Authority to an action for damages based on negligence by declaring the Housing Authority shall possess the power to sue and be sued.

■■ "I am satisfied the demurrer must be overruled. So far as the issue of governmental or pro-

prietary capacity is concerned, the Housing Authorities Act, together with decisions discussing the distinction between governmental and proprietary acts clearly lead to the conclusion that it was the legislative intent to set up an authority which should function in a purely governmental capacity. Not only is this expressed in several places in the Act, but the character of the responsibility imposed upon the Authority impels the belief that no proprietary act is here involved.

"Section 99-2002, O.C.L.A., expressing the legislative declaration of policy; Section 99-2008, O.C.L.A., providing that 'an Authority shall constitute a public body corporate and politic exercising public and essential governmental functions'; Section 99-2009, O.C.L.A., prohibiting profit and fixing rentals 'at the lowest possible rates consistent * *'; Section 99-2010, O.C.L.A., providing the inclusions within rentals to be charged tenants of the Authority; Section 99-2020, O.C.L.A., exempting property of the Authority from process or judgment lien; Section 99-2021, O.C.L.A., exempting property from taxation;—all indicate the legislative commitment to an essential governmental function in connection with the organization and operation of a Housing Authority and incidental facilities. The declarations of the act and the admitted factual conditions inducing it bring its consideration within the scope of authorities defining governmental functions and relating same to need of sanitary dwellings for persons of low income, and to the health, safety, morals and welfare of the people of the state. Thus the war effort is promoted and the general welfare advanced.

"In Antin vs. Union High School, 130 Ore. 461 at page 470 [280 P 664], our Supreme Court spoke as follows:

'It acts wholly as a governmental agency when performing the duties imposed upon it by statute. In the performance of its public duties the school district is bound to provide

a building and to provide heat, light and water for the pupils, all of which is essential to the maintenance of the school.'

"And quoting in said case from Bolster vs. City of Lawrence, 225 Mass. 387, [114 NE 722, LRA 1917B, 1285]:

'The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability.'

"From Wold vs. City of Portland, 166 Ore. 455 [112 P2d 469], from page 463:

'The authorities are agreed, however, that when the undertaking by the city is not for the promotion of its own private interests as a corporate entity, but for the public good, such undertaking is governmental.'

"From Etter vs. City of Eugene, 157 Ore. 68 [69 P2d 1061]:

'When acting in their public capacity, that is to say, in matters pertaining to the government of their inhabitants and the ordering of their public offices, they exercise the public franchise conferred upon them solely for the public good rather than for their special advantage, and, in so acting, they are, in respect to such matters, a part of the machinery of the state government, and for the acts and omissions of their officers, agents and employes they are not liable at the suit of a private person.'

"From Hagerman vs. Seattle, 189 Wash. 694 [166 P2d 1152]:

'It is quite apparent that there are certain kinds of public service that only the government can adequately perform. First among these are the administration of justice, the maintenance of peace by the enforcement of the law, the protection of persons and property against the ravages of fire, and the preservation of the public

health against sickness and disease. It is in these fields that the principle of immunity from torts has its widest application and place * *'

"And from the same case:

'The underlying test in distinguishing governmental functions from corporate functions and, consequently, in determining the liability or non-liability of the municipality for the torts of its officers and agents, is, in this state, whether the act performed is for the common good of all, that is, for the public, or whether it is for the special benefit or profit of the corporate entity.'

"And from Antin vs. Union High School, [supra, at page 466]:

'When a city undertakes to furnish water, manufacture gas, generate electricity, or operate street railways for emolument or gain, or for the peculiar benefit of its citizens, it is acting in its private or proprietary capacity and is responsible for its own negligent acts or omissions. But when a municipality provides police, fire or health protection, or education for its youth, such functions are public or governmental in their nature, and for its own negligent acts or wrongful omissions, or those of its agents and servants, it is not liable to suit by a private person.'

"Much other authority might be cited supporting these conclusions. The foregoing illustrate the practically unanimous concept of governmental immunity, and within the rules so enunciated the instant case unquestionably falls, both by express declaration of creative act and because of the nature of the function, responsibility for which is imposed in the Housing Authority.

■ "So far as Sec. 8-702, O.C.L.A., is concerned, as amended by Chapter 3, Laws of 1941, authorizing suit or action against public corporations, this . has repeatedly been construed to limit such liti-

gation to acts in a corporate, as distinguished from a governmental, capacity.

"From Gearin vs. Marion County, 110 Ore. 390 [223 P 929], from page 399:

'As no statute has created a corporate obligation on the part of Marion County to answer to any individual for the torts committed by its officers or agents, these cases do not support plaintiff's contention.'

"And from Antin vs. Union High School District No. 2 [supra, at page 465]:

'But this statute has been too often construed by this court, and held not to include within its purview an injury arising from some public or governmental act of a public corporation, to be now open to question in respect to the non-liability of a public corporation for an injury arising from the performance by it of a public governmental act.'

"And from Blue vs. City of Union, 159 Ore. Page 5 [75 P2d 977], from page 11:

'In view of the decisions of this court construing the section after the amendment of 1887, the reason for the enactment of the law, at least as far as liability of municipal corporations proper, such as cities, are concerned, must be a matter of speculation. For this court has many times declared, and today it is not open to question, that this statute does not include within its purview an injury arising from some public or governmental act of a public corporation, but only gives a remedy when the corporation is liable in its corporate capacity as distinguished from its political or governmental capacity as an arm of the state.'

██ "It is urged that even though acting in a governmental capacity and without the authorization of suit by statute, nevertheless the Portland Housing Authority is liable for damage to property as distinguished from injury to person.

"I am unable to follow this distinction. Such liability rests, in our Supreme Court opinions, upon principles of a taking analogous to eminent domain or a trespass. The liability is not based upon any pro forma difference between damages to property and injuries to person.

"From Theiler vs. Tillamook County, 75 Ore. 214 [146 P 828], at page 218:

'Though a purely municipal corporation does not ordinarily sustain to a person injured by its negligence the exact relation of a quasi public corporation, it is believed that the analogy is sufficient to render a county liable in damages for a trespassing upon private property and when such invasion practically amounts to a taking of any part of the premises without condemnation.'

"And from Gearin vs. Marion County, supra, from page 401:

'Whatever doubt may have existed by reason of the decisions referred to, that doubt has now been settled by the later decisions of this court in the cases above cited. The allegations of the complaint in the instant case make the action one purely in tort. There is no allegation of the taking of the property for a public use, or upon which it can be contended that plaintiff's property was taken for a public use. * * In this case, under the allegations of the complaint, the county made no appropriation of plaintiff's land, nor has the county or the public used the same for any purpose beneficial to the county or to the public. There is no intention upon the part of the county to subject the property or any part thereof to a public use, and no taking of the property resulted from the acts alleged. * * The infliction of damages in the manner alleged, although resulting in the destruction of a part of this property through the washing away of his buildings, if caused as contended for, and the deposit of a number of logs upon his

property, was not a taking of his property within the meaning of that term as used in the constitution.'

"Here it cannot be contended the act complained of falls within any theory of liability based upon a 'taking.' The principle of governmental immunity is, therefore, applicable to the issue as pleaded.

■ "Plaintiff forcefully argues that the Housing Authority Act itself evidences a waiver of its governmental immunity. This argument is principally based upon Sec. 99-2008. This section reads, in part:

'An authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act, including the following powers; in addition to others herein granted: (a) To sue and be sued;'

"Plaintiff contends such general stipulation in the act of creation evidences a legislative intent to waive preexisting governmental immunity. In support of this position the court is referred to decisions of the United States Supreme Court and of two state courts, wherein it is held that federal agencies are subjected to suit or action for both tort and contract liability when such general authorization appears in the act of their origin. These cases undoubtedly establish a national policy with reference to the non-immunization of national agencies and constitute a change in attitude toward them. Illustrative of this position are the following cases:

"Keifer & Keifer vs. R.F.C., 306 U.S. 381 [83 L ed 784, 59 S Ct 516]. In this case the Regional Agricultural Credit Corporation, chartered by the R.F.C., was held liable to suit. The act creating the R.F.C. granted it authority 'to sue and be sued, to complain and defend in any court of compe-

tent jurisdiction, state or federal.' I quote from page 395:

'In the light of these statutes it ought not to be assumed that when Congress consented 'to suit' without qualification, the effect is the same as though it had written "in suits on contract, express or implied, in cases not sounding in tort." No such distinction was made by Congress, and no such interpolation into statutes has been made in cases affecting government corporations incorporated under state law or that of the District of Columbia. There is equally no warrant for importing such a distinction here. To do so would make application of a steadily growing policy of governmental liability contingent upon irrelevant procedural factors. These, in our law, are still deeply rooted in historical accidents to which the expanding conceptions of public morality regarding governmental responsibility should not be subordinated. Congress has embarked upon a generous policy of consent for suits against the government sounding in tort even when there is no element of contract.'

"In F.H.A. vs. Burr, 309 U.S. 242 [84 L ed 724, 60 S Ct 488], the case considered the liability of the Federal Housing Authority to sue and be sued. The act provides the administrator shall 'be authorized in its federal capacity to sue and be sued in any court of competent jurisdiction, state or federal * *' The court held the authority was liable generally to suit or action. I quote from pages 246 and 247:

'Hence, in absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to "sue and be sued", it used those words in their usual and ordinary sense.'

"And again from page 249:

'In our view, however, the bridge was crossed

when Congress abrogated the immunity by this "sue and be sued" clause.'

"In Union National Bank of Clarksburg vs. McDonald, 36 Fed. Supp. 46, the court cited the Kiefer [sic] and Burr cases, and concludes, on page 49:

'These cases do say that Congress has completely abrogated any immunity which may have existed by this "sue and be sued" clause. They say that this consent is unqualified; that no restrictions will be implied, and that such instrumentalities may hereafter be sued as private persons could be sued under like circumstances.'

"The same conclusion is reached in Zins vs. Justus, 299 Northwestern 685 [211 Minn 1], being a decision from Minnesota; and in Housing Authority of Birmingham vs. Morris, 14 Southern Reporter, 2nd series, Page 527 [244 Ala 557]. The Minnesota case involved a consideration of the National Housing act. Quoting from page 687:

'Our problem here is to determine whether in creating the Federal Housing Administration Congress intended that it and its administrator be immune from suit for torts.'

"Obviously the policy of the government is to subject many such administrative agencies to suit generally, and the Supreme Court has so construed the 'sue and be sued' clauses. This policy, however, conflicts with the established policy of our own state as its legislative acts are interpreted and applied by our own Supreme Court. In determining the liability of public corporations the effort has been to ascertain the nature of the particular function. The inquiry has been addressed to the character of the activity. If acting in a governmental capacity, liability has been denied; if acting in a proprietary capacity, it has been conceded. Many of our public corporations are created under acts containing the 'sue and be sued' clause, but the court has never attached significance to such authorization. Their principal concern has been to

determine whether the tort was committed while the agency was operating in a proprietary or a governmental capacity.

"In Gearin vs. Marion County, [supra, at page 402], the statute declared a county to be a body politic and corporate with power to sue and be sued. The question of tort liability was raised and disposed of by the court in favor of the county. The concluding sentence of the opinion on page 402 reads:

'As there was no statutory or constitutional authority for bringing this action against the county, the demurrer to the complaint was properly sustained.'

In *Noonan vs. City of Portland,* 161 Ore. 213, page 221, [88 P2d 808], the rule is stated:

'Under the theory that a municipality is a body politic for the purpose of administering within its boundaries the affairs of the state, immunity from suit was soon claimed by the municipalities. The courts perceived that when a city is engaged in the performance of a governmental function which the state would otherwise have been compelled to perform, non-suability is as available to it as it would have been to the state; but that when a municipality is not engaged in the performance of such a function, but is employed in the domain of commerce, it can no more justly escape the consequences of whatever wrongs it may do than if an individual were similarly engaged. Influenced by these considerations, the courts, in order to promote justice and to subject municipalities to liability where it was deemed that liability should be borne, made the distinction between governmental and corporate functions of municipalities.'

"From Antin vs. Union High School District No. 2, [supra, at page 465]:

'Under our statute, * * a school district may sue and be sued, and an action may be main-

tained against a school district "for an injury to the rights of the plaintiff arising from some act or omission" of the district. If this were a case of first impression, and there were no controlling decisions upon this question, we would be inclined to hold, at least such is the opinion of the writer, that the legislature intended by the enactment of these two sections, to make a school district liable for the consequences of its own wrongful or negligent acts, although not liable for the misfeasance or nonfeasance of its officers or agents * * But this statute has been too often construed by this court, and held not to include within its purview an injury arising from some public or governmental act of a public corporation, to be now open to question in respect to the non-liability of a public corporation for an injury arising from the performance by it of a public or governmental act.'

"And again in Blue vs. City of Union, [supra], the court, considering the liability of the city for tort, and the effect of Sec. 8-702, O.C.L.A., as amended, Laws of 1941, Chapter 3, limited the effect of this authorization to sue with these words, on page 11:

'* * * * * [Same quotation as set forth above.]

"Our own state, therefore, is committed to the doctrine of governmental immunity not disturbed by 'sue and be sued' clauses, and has consistently declared the effect of Sec. 8-702, O.C.L.A., to be limited to acts in a proprietary capacity. In each instance where liability of a public corporation for a tort was asserted, the inquiry was made to determine the character of the activity, and decision was based upon conclusions so reached. This state has never held 'sue and be sued' clauses established a waiver of immunity; its steadfast policy has been the exemption from liability of public corporations engaged in governmental duty, and the sub-

mission of public corporations acting in a proprietary capacity. The reversal of attitude upon the part of the United States in the adoption of its present policy of the subjection to general suit, and the interpretation of 'sue and be sued' clauses in support of the same, is not the policy of the State of Oregon. While the national government may undoubtedly, through its Congress and the interpretations of its courts, establish such policy as it sees fit, this in no wise affects the rights of states in the formulation of their own policies by their legislative bodies and their courts.

"In this case we are solely concerned with an act of the state legislature, and not with the interpretation of a federal statute. While the policy of the government is of interest, it is, nevertheless, not determinative of the state's right to establish and pursue its own policy with reference to its own public corporations. This it has done through the years, and the present act creating the Portland Housing Authority in no wise indicates any intention to depart from this practice.

"These being the court's conclusions it follows the demurrer must be overruled."

We are firmly of the opinion that in the performance of its statutory functions, the defendant Housing Authority acts only in a governmental capacity. It in no wise engaged in private business for a profit, nor for any special corporate benefit for itself. It is simply carrying out a governmental function in the protection of the health, morals, safety, and general welfare of the public.

We have given careful consideration to the cases from other jurisdictions cited in the respective briefs of counsel, but we do not deem it necessary to discuss them. To adopt a conclusion contrary to that which we have adopted would require us to overrule a number of our prior decisions. We find no reason for so

doing, inasmuch as we are convinced that those decisions correctly stated the principles of law applicable to the situation now before us.

In addition to the reasons stated in the foregoing opinion for holding defendant immune from tort liability, defendant in its brief urges other grounds for the same conclusion.

Defendant makes the point that the Housing Authority is a quasi-municipal corporation organized exclusively for the purpose of carrying on governmental functions and is, therefore, on that ground alone, immune from tort liability. In this connection, defendant draws a distinction between ordinary municipal corporations and quasi-municipal corporations, and the rules of law applicable to each, and contends that a quasi-municipal corporation has uniformly been held to be exempt from tort liability, citing the following authorities: *Lovell v. School Dist. No. 13,* 172 Or 500, 143 P2d 236; *Wasco County P. U. D. v. Kelly,* 171 Or 691, 137 P2d 295; *Wold v. City of Portland,* 166 Or 455, 112 P2d 469, 133 ALR 1207; *Blue v. City of Union,* supra; *Antin v. Union High School Dist. No. 2,* supra; *Cook v. The Port of Portland,* 20 Or 580, 27 P 263, 13 LRA 533; *Rankin v. Buckman,* 9 Or 253; 1 McQuillan, Municipal Corporations 3d ed, 482, § 2.28; 4 Dillon, Municipal Corporations 5th ed, § 1640; 34 YLR 4.

Further, defendant contends that the functions of the Housing Authority are charitable in nature, and it is immune from tort liability for that reason, citing the following authorities: *Gregory v. Salem General Hospital,* 175 Or 464, 153 P2d 837; *Hamilton v. Corvallis Hosp. Ass'n.,* 146 Or 168, 30 P2d 9; *O'Neill v. Odd Fellows Home,* 89 Or 382, 174 P 148; *Hill v. Tualatin Academy,* 61 Or 190, 121 P 901; *Leavell v. Western*

*Kentucky Asylum,* 122 Ky 213, 91 SW 671, 4 LRA NS 269; *Williamson v. Housing Authority,* 186 Ga 673, 199 SE 43; *Krause v. Peoria Housing Authority,* 370 Ill 356, 19 NE2d 193; *Edwards v. Housing Authority of Muncie,* 215 Ind 330, 19 NE2d 741; 10 Am Jur, Charities, 689, § 142.

Having reached the conclusion which we did, as outlined in the memorandum opinion of Judge Crawford, it is needless for us to discuss these additional grounds urged by defendant, but, by omitting to discuss them, we do not wish to be understood as denying their validity. As to them, we simply express no opinion.

■ For us to hold that housing authorities are subject to tort liability would amount to judicial legislation. It is not for this court to legislate, but rather to interpret. If it is desirable that these quasi-municipal corporations be subjected to tort liability, the remedy lies in the legislative assembly; not in the courts.

The judgment is affirmed.

WARNER, J., DISSENTS.