# DEERING et ux, *Respondents,*
## *v.*
# HYDE, *Appellant.*
## (TC 92165, SC 24554)
### 563 P2d 693

Sid Brockley, Oregon City, argued the cause for appellant. With him on the briefs were Jack, Goodwin & Urbigkeit.

Gerald R. Pullen, Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent, Linde, and Mengler, Justices.

LINDE, J.

## LINDE, J.

Defendant Ronald Hyde appeals from a judgment for plaintiffs enforcing an agreement for the sale of a refuse collection business in Milwaukie, Oregon, over a number of affirmative defenses presented by him. The controversy concerns the effect on the agreement of actions taken by the City of Milwaukie in franchising the business.

Plaintiff George Deering began collecting refuse in Milwaukie in 1945 under an agreement with the city, which in 1948 was extended for a ten-year period. In 1956 the city council by an ordinance No. 633 approved a new five-year contract giving Deering the exclusive right to collect refuse in Milwaukie. The ordinance provided in part:

> * * * Upon the expiration of said contract by lapse of time or otherwise, the mayor of the City of Milwaukie is hereby authorized, from time to time as may be required, to enter into other contracts with other persons, firms or corporations for the collection, conveyance and disposal of garbage, ashes, rubbish and refuse accumulating within the City of Milwaukie, Oregon, subject to the approval by the City Council as to the terms and conditions of any such contracts. * * *

After three years, the city and Deering negotiated a revised agreement giving him an exclusive franchise to collect garbage in Milwaukie for 20 years, until 1979. This franchise agreement provided that it could be transferred only with the written consent of the City of Milwaukie.

In 1966 Deering sold a geographically defined portion of the business to defendant Ronald Hyde, who had been employed in the business for two years, by means of the contract at issue in this case. The price was $44,500, of which $10,000 was paid down and the remainder, with interest, by monthly payments of $356.70. Deering discussed the transfer with city officials but did not obtain the city's formal consent in

[ 217 ]

writing. A termination clause in the contract provided, in part:

> * * * [I]n the event the exclusive franchise contract that VENDOR has with the City of Milwaukie is ended or terminated or in the event the VENDEE loses his right to operate under the sale of the VENDOR's exclusive franchise contract with the City of Milwaukie through this sale, except by the willful neglect of the VENDEE or VENDOR, this entire agreement shall be terminated and declared void and have no force and effect and no further payments shall be required from VENDEE * * *

except payments due on account of a dump truck. The contract also contained a provision for payment of attorney's fees to the prevailing party in case of litigation.

In early 1974 defendant and other successors to Deering's refuse collection franchise sought a rate increase from the city council. The council denied the increase pending an investigation of the franchise. In May, 1974, the city attorney wrote a memorandum to the city manager concerning one of the other transferred portions of the franchise, which expressed the opinion that Deering's 20-year franchise agreement of 1959 was void because in excess of the five-year term authorized in Ordinance No. 633. When this position was reported to a meeting of the city council in August, Mr. Hyde's attorneys wrote to plaintiffs requesting them to take steps to secure him a franchise from the city council equivalent to that which had been transferred by the contract; if Hyde had to get a new franchise for himself, or was unsuccessful in doing so, he would cease payments in reliance on the termination clause of the contract. Plaintiffs did not make the efforts requested by defendant, and he made no payments after August 1, 1974. Defendant and the other successors to the Deering franchise did get renewed franchises from the city under a new ordinance in October 1974. This suit to enforce the 1959 contract followed.

Defendant pleaded affirmative defenses of illegality and failure of consideration, relying on the asserted invalidity and termination of Mr. Deering's 20-year franchise and on its transfer to him without the written consent of the city. He also counterclaimed for return of his payments under the allegedly illegal transactions. The trial court rejected defendant's contentions and entered judgment for plaintiffs for the remainder of the purchase price, with interest, and $1,000 attorney's fees.

■■ We do not consider the flaws asserted to invalidate either transaction in this case to be of the kind to invoke the defense of illegality. That doctrine is concerned generally with denying legal effect or enforcement to undertakings that are forbidden or restricted in order to protect important public interests. See Murray on Contracts 703; Restatement of Contracts § 512. No general law or overriding public policy is argued in this case to show that a city could not negotiate an exclusive 20-year franchise for garbage collection or let that franchise be transferred. The argument is that the city ordinance itself authorized only a five-year agreement, and that the (allegedly illegal) 20-year agreement by its own terms permitted transfer only with the city's written consent. No doubt these provisions adopted by the city are by that fact alone an expression of public policy, and either of them might at some time have been made an issue by the city in a dispute about the franchise. But not every mistake or failure to comply with prescribed procedures that might give the city a right to disown a transaction rises to the level of "illegality" permitting a third party to do so.

■ Closer to the mark is defendant's claim that plaintiffs breached their part of the bargain or failed to deliver the promised consideration if they did not in fact provide their purchaser with a valid and effective franchise. The parties provided for that possibility in the termination clause of their contract. This clause, quoted earlier, excused further payments by the ven-

dee, Hyde, in the event the vendor's franchise from the city should be terminated or the vendee should lose his right to operate under it. If either contingency occurred, Hyde would be released from his remaining obligation to pay for the transferred business.

The difficulty with defendant's reliance on this provision is that, on the record before us, it appears to have been premature. The question is whether what the city did in 1974 represented a termination of the Deering franchise, as defendant claimed, or a reaffirmation of that franchise in the hands of Deerings' transferees, as plaintiffs contend. In his letter to the Deerings, defendant treated the city attorney's opinion reported to the council as an official city action declaring the Deering franchise void. Perhaps the city could have maintained such a position, although plaintiffs suggest possible issues in reading Ordinance No. 633 to show that this conclusion is not inescapable. But the city also had the option to respond to the city attorney's advice by curing the old defect and reaffirming the successor franchises.

Defendant invoked the termination clause without awaiting the outcome. He may well have been right to request that his vendor take steps to defend the franchise. What might have happened if defendant had done nothing himself to pursue the matter with the council is not before us.[1] The record shows only that the city studied and discussed the status of the refuse collection operations in Milwaukie over a period of months and eventually issued new franchise agreements for the existing operations originally obtained from Deering. On the issue whether the city council meant by this to treat the Deering franchise as invalid or to waive its possible defects and reaffirm it unchanged for his successors, the burden of proof lay with defendant. The trial court gave the city's action

---

[1] We note that the termination clause itself excludes the buyer's defense if his right to operate should be lost "by the willful neglect of the VENDEE or *VENDOR*" (emphasis supplied), but plaintiffs do not invoke this rather puzzling exculpatory provision.

the second interpretation and found that defendant's right to operate under the franchise acquired from plaintiffs had never been terminated. The record leads us to the same conclusion.

Affirmed.