Wallace M. TELFORD,
Plaintiff-Appellant,

v.

CLACKAMAS COUNTY HOUSING AU-
THORITY, Ralph Groener, Robert Schu-
macher, Jono D. Hildner, Defendants-
Appellees.

No. 81–3251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1983.

Decided July 14, 1983.

Gary M. Bullock, Portland, Or., for plaintiff-appellant.

Keith Kinsman, Oregon City, Or., for defendants-appellees.

Before CHOY, TANG and BOOCHEVER, Circuit Judges.

TANG, Circuit Judge:

This case concerns the validity of an employment contract between Mr. Telford and the former Board of Housing Commissioners for the Clackamas County Housing Authority, and the resulting property interest enjoyed by Mr. Telford. The validity of the contract depends upon whether, under Oregon law, Telford was to perform proprietary or governmental functions. The magistrate held that the contract called for governmental functions, and could not extend beyond the Housing Commissioners' terms of office.

Reviewing the magistrate's decision de novo, we find that Telford performed proprietary rather than governmental func-tions. Thus, the length of his contract was limited only by reasonableness and good faith rather than by the Housing Commissioners' own terms of office. We reverse.

## I

### Facts

Wallace Telford was the Executive Director and Secretary-Treasurer of the Clackamas County Housing Authority from July 1, 1953 to July 28, 1977. He was highly qualified and operated one of the two housing authorities in the nation that required no operating subsidy from HUD (Pretrial Order, Stipulated Facts).

On December 9, 1976, the Housing Authority contracted to employ Telford in that same capacity until the last working day of February 1982. The contract period was five years and two months. The termination date was Telford's seventieth birthday and planned retirement date. The parties entered into the contract because they "agreed that it would be in their mutual best interest to enter into a binding contract for the continued employment of Telford until his retirement date of February, 1982 in order to provide Telford with job security to retirement and to ensure for the Housing Authority the continued services of its experienced and capable executive secretary." The parties had not entered a written contract before this time. Instead, Telford had been rehired informally on a regular basis since 1953.

Until July 1, 1977, the Housing Authority's governing body consisted of a five-member Board of Housing Commissioners. Individual board members had five-year terms of office. The terms were staggered, with one new member beginning each year. Effective July 1, 1977, the Clackamas County Board of Commissioners passed a resolution withdrawing all authority from the Housing Authority Board of Commissioners and transferring the functions and power of the Housing Board to themselves (Resolution and Order No. 77–668). Or.Rev.Stat. §§ 456.095, 456.233.

On July 28, 1977, the Housing Authority, through its new Board, demoted Telford from Executive Director to Housing Manager. On March 23, 1978, they lowered his salary from $2,202 per month to $1,725 per month (Resolution and Order No. 864).

Telford was fired as Housing Manager on December 15, 1978. He learned of his termination through a letter from the new Executive Director of the Housing Authority. The letter stated that Telford's "continued service is not in either the interest of the Housing Authority or the public . . . ."

In July of 1980, Telford filed an action under 42 U.S.C. § 1983 alleging that termination of his public employment deprived him of a property right without affording him due process as required by the fifth and fourteenth amendments to the United States Constitution. He also alleged breach of contract as a pendent Oregon state law claim.

The Housing Authority moved for summary judgment, and the United States Magistrate granted the motion.[1] The magistrate concluded that Telford had no property right under Oregon law, because under Oregon law a public body may not contract with a party to provide governmental functions for a term longer than the public body's term of office. He found that Telford performed governmental functions as Executive Director of the Housing Authority. Consequently, the magistrate held that Telford's contract exceeded, by two months, the previous Housing Board's authority to contract, was void *ab initio* and, thus, did not confer a property right.

## II

### Standard of Review

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir.1981); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980).

The existence of property rights and interests in continued employment entitled to protection under the Due Process Clause is determined by reference to state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Black v. Payne,* 591 F.2d 83, 88 (9th Cir.), *cert. denied,* 444 U.S. 985, 100 S.Ct. 493, 62 L.Ed.2d 414 (1979). The existence of a property interest in this case depends on the validity of Telford's employment contract under Oregon law. The contract is valid under Oregon law if it created duties of a proprietary rather than of a governmental nature. *Miles v. City of Baker,* 152 Or. 87, 92–93, 51 P.2d 1047 (1935); *Jacobberger v. School District No. 1,* 122 Or. 124, 131, 256 P. 652 (1927).

In deciding whether proprietary or governmental duties were the subject of contract we must first determine the distinction between these functions under Oregon law and then construe the terms of the contract in light of those distinctions. We have traditionally accorded deference to a district court's interpretation of the substantive law of the state in which the court sits. *See State ex rel. Edwards v. Heimann,* 633 F.2d 886 at 888 n. 1 (9th Cir.1980). However, pursuant of a stipulation by the parties, this case was decided by a magistrate. Because magistrates are not judges under Article III of the Constitution and because the magistrate's decision did not receive the imprimatur of a district court judge, we conclude that the decision is entitled to little or no special deference. Therefore, this court may determine independently the distinctions between proprietary and governmental functions under Oregon law. As to the interpretation of contractual language, we grant *de novo* review. *Bank of California, N.A. v. Opie,* 663 F.2d at 979.

## III

### Validity of the Contract

An employee's interest in continued employment is a "property" interest for

---

1. The parties agreed to try all matters before a magistrate. *See* 28 U.S.C. § 636(c).

due process purposes if there are rules or mutually explicit understandings that support a claim of entitlement to the benefit. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Guy v. Mohave County,* 688 F.2d 1287, 1289 (9th Cir.1982); *Minielly v. Oregon,* 242 Or. 490, 411 P.2d 69, 73 (1966); *Papadopoulos v. Oregon State Board of Higher Education,* 14 Or.App. 130, 511 P.2d 854 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1975). A written contract with an explicit provision for the length of employment is evidence of a formal understanding supporting a claim of entitlement to employment, unless sufficient cause for removal is shown. *Perry v. Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699. However, absence of an explicit contractual provision does not always preclude the possibility of a property interest in continued employment or re-employment. *Id.* A property interest in employment can also be created by ordinance or by an implied (rather than an express) contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Perry v. Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699; *Black v. Payne,* 591 F.2d at 88. In any event, the sufficiency of the entitlement claim must be decided by reference to state law. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Black v. Payne,* 591 F.2d at 88. Thus, the claim of entitlement here is dependent upon the validity of Telford's employment contract under Oregon law.

■ In cases concerning a public body's power to enter contracts outlasting its own term of office, the Oregon Supreme Court has distinguished between public employees performing "governmental functions" and those employees performing "proprietary functions." *Jacobberger v. School District No. 1,* 122 Or. at 131, 256 P. 652. An Oregon public body may not enter a contract for governmental functions extending beyond its own term of office. The power to contract with one to perform proprietary functions, however, is limited only by "reasonableness and good faith." *Id.* at 131,

135, 256 P. 652. Thus, if Telford was to have performed governmental functions, the contract period could not extend beyond the term of the Board of Housing Commissioners.

> If the work provided for in plaintiff's alleged contract is a governmental function, then the great weight of authority is to the effect that the outgoing council could not bind its successors in such a contract.

*Miles v. City of Baker,* 152 Or. at 92–93, 51 P.2d 1047.

The County Housing Authority itself, as a municipal corporation, is both a corporate and politic public body. It performs both governmental and proprietary functions. Or.Rev.Stat. § 456.120; *Wickman v. Housing Authority of Portland,* 196 Or. 100, 117, 247 P.2d 630 (1952). *See also Housing Authority of the City of Seattle v. State of Washington,* 629 F.2d 1307, 1309 (9th Cir. 1980); 10 McQuillin, *Municipal Corporations* § 29.100 (3d ed. 1981). Thus, the Housing Authority's Board of Housing Commissioners, in whom all of the powers and duties of the Housing Authority are vested, also performs both governmental and proprietary functions. Or.Rev.Stat. § 456.095.

Telford's powers and duties, however, were determined solely by the Housing Commissioners and created by contract. Or.Rev.Stat. § 456.105(4). The issue, then, is whether Telford's contractual duties constituted governmental or proprietary functions.

Oregon substantive law provides little guidance. In *Jacobberger v. School District No. 1, supra,* the Oregon Supreme Court held that the contract between an architect and a school board could extend beyond the school board's term of office. In *Miles v. City of Baker,* 152 Or. 87, 51 P.2d 1047 (1935), the Oregon Supreme Court held the outgoing City Board of Commissioners could not enter a binding contract with an accountant to audit the city's books for the following fiscal year. It found that the accountant had been hired to perform a governmental function. Neither case, how-

ever, analyzed the employment functions to be carried out in terms of objective criteria for making the governmental-proprietary function distinction. Moreover, the results in *Miles* and *Jacobberger* are not easily reconciled. No more recent Oregon case discusses the governmental-proprietary function distinction in the context of municipal contract law.[2]

The magistrate below concluded that Telford "was hired to perform governmental functions because his [contractual] responsibilities were intended to further the statutory functions of the Housing Authority and help provide safe and sanitary dwelling accommodations for persons and families of lower income." This reasoning is unpersuasive. The responsibilities and duties of every Housing Authority employee are intended to further the statutory functions and goals of the Housing Authority. The magistrate, thus, suggests that every Housing Authority employee, no matter how menial his tasks, necessarily performs governmental functions because, to some degree, he aids the Housing Authority in its statutory functions. Such reasoning would result in every public employee, who aids his employer, being terminable at will, despite any contractual relationship or guarantee. The magistrate also concluded that, because helping to provide housing for lower income persons benefits the public, it constitutes a governmental function. We do not find compelling the suggestion that every contract which in some way, however minor, benefits the public good is a contract for governmental functions. *See Corvallis Sand & Gravel Co. v. State Land Board,* 250 Or. 319, 439 P.2d 575, 581–84, 585 (1968)

(O'Connell, J., dissenting); *Wold v. City of Portland,* 166 Or. 455, 463, 112 P.2d 469 (1941). All public employees work for the public good and public benefit. Not all public employees perform governmental functions, however.

■ A part of Mr. Telford's contract called for broad duties in general terms. He was to be the public representative of the Housing Authority and was to enforce adopted management policies. Telford had no authority to make policy, however. He only carried out policies set by Housing Commissioners. Telford's specific contractual duties were identical to those that would be provided by a private corporation or a private landlord. He operated the Housing Authority for a profit, he paid bills, collected rents, maintained records, reviewed tenant applications, interviewed and selected tenants. *See* Prosser, *Torts* § 131 at 980–81 (4th ed. 1971); 10 McQuillin, *Municipal Corporations* § 29.101 at 468–69 (3d ed. 1981). These are proprietary or corporate functions. Telford's contractual duties did not fall within the class of governmental functions in any substantial part.

Absent a recent, express statement of substantive law by the Oregon Supreme Court, we are unable to conclude that Telford's contract was for governmental functions in any substantial part.[3] Consequently, under Oregon law, the contract was not void because it extended into the term of a new Housing Commission. The power of the Housing Authority Commissioners to contract for such functions was limited only by "reasonableness and good faith." *Jacob-*

**2.** At least until 1970, however, the Oregon Supreme Court continued to recognize the governmental-proprietary function distinction in the area of sovereign immunity from tort liability. *See e.g., Elmore v. Aloha Sanitary Service,* 256 Or. 267, 473 P.2d 130, 131–32 (1970) (treatment and disposal of sewage constitutes a governmental function for purposes of governmental immunity). The distinction has been diluted by Or.Rev.Stat. 30.265(1) which provides that, subject to certain limitations, "every public body is liable for its torts and those of its

officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function...." The emphasis now is upon whether the tortfeasor was performing a discretionary function. Or.Rev.Stat. 30.265(3)(c).

**3.** We cannot interpret an opinion of the Oregon Attorney General, relying on out-of-state law, as authority comparable to a definitive statement of Oregon law by the Oregon Supreme Court. *See* 1956–58 Op.Atty.Gen. 174 (1957).

*berger v. School District No. 1,* 122 Or. at 131, 135, 256 P. 652 (1927).[4]

The contract was entered into in good faith by the parties. All agreed that it would serve their mutual best interest to enter a binding contract to provide Telford with job security until retirement and to provide the Housing Authority with the "continued services of its experienced and capable executive secretary." It also was reasonable both in its terms and duration, in light of Mr. Telford's impressive twenty-five year employment history with the county.

Moreover, the Oregon Supreme Court, like many others, has gone beyond considering only the facial validity of contracts. The court has balanced the reasons for enforcing arguably invalid contracts against the traditional reasons for invalidating them. *Deering v. Hyde,* 278 Or. 215, 219, 563 P.2d 693 (1977). *See also Hendrix v. McKee,* 281 Or. 123, 128–29, 575 P.2d 134 (1978); *Harrell v. Travelers Indemnity Co.,* 279 Or. 199, 206, 567 P.2d 1013 (1977); *Eldridge v. Johnston,* 195 Or. 379, 405, 245 P.2d 239 (1952).

None of the parties to Telford's contract suspected that it might be invalid. *See Hendrix v. McKee,* 281 Or. at 128–29, 575 P.2d 134. Telford had been employed continuously since 1953. All parties abided by the contract, until the new board was installed. The contract did not call for illegal or immoral services. It violated no statutes. It did not tend to injure the public in any way. No important public interest needing protection is affected by the contract or outweighs the many reasons to enforce the contract. *See Deering v. Hyde,* 278 Or. at 219, 563 P.2d 693.

4. We need not discuss whether Oregon common law gave the Housing Authority the "power to remove" Telford at the city's pleasure and without cause from public office or whether that power could be contracted away. *See Morris v. Parks,* 145 Or. 481, 485, 28 P.2d 215 (1934). Telford was not a public officer. Moreover, the 1934 language cited by the parties, that the implied power of removal cannot be contracted away, is of doubtful validity after

Telford's contract with the Housing Authority was valid. Telford had an expectation of continued employment giving rise to a property interest protected by the Due Process Clause of the United States Constitution. That contract was breached by the Housing Authority.

The Housing Authority, therefore, was not entitled to summary judgment. The case is reversed and remanded for further proceedings in accordance with this opinion.

REVERSED and REMANDED.

*Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Minielly v. Oregon,* 242 Or. 490, 411 P.2d 69 (1966); and *Papadopoulos v. Oregon State Bd. of Higher Educ.,* 14 Or.App. 130, 511 P.2d 854 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1975).