[No. 11817.   Department One.   October 20, 1914.]

## L. A. THOMAS, *Appellant*, v. WHATCOM COUNTY *et al.*, *Respondents.*[1]

COUNTIES — COMMISSIONERS — DECISIONS — LACK OF RULINGS — COURSE OF CONDUCT. It is a reasonable inference that the board of county commissioners had determined that three deputy sheriffs and one jailer were necessary to a proper conduct of the sheriff's office, although no formal order was entered to that effect, where it appears that the board had monthly for eight years audited and allowed payrolls for their services.

SAME—COMMISSIONERS—CONTINUING EXISTENCE—CHANGE OF PERSONNEL. The county board of commissioners has a continuous existence so that a change in its personnel does not abrogate its findings or resolutions.

SAME—FINDINGS BY COMMISSIONERS—ABROGATION—CONSTRUCTION. A finding by the county commissioners that three deputy sheriffs and one jailer were necessary to a proper conduct of the sheriff's office is not abrogated by a resolution to the effect that the appointment of three certain deputies and a jailer were inimical to the best interests of the county, and that they would not be allowed any pay, but that the board was willing to allow or pay any other persons appointed by the sheriff.

SHERIFFS—DEPUTIES—POWER TO APPOINT — STATUTES — CONSTRUCTION. Under Rem. & Bal. Code, § 4032, providing when county officers may employ necessary help, at just and reasonable compensation, by and with the consent of the county commissioners, and making the officer responsible upon his official bond for the acts of his employees, and Id., § 4065, providing that the county commissioners may allow a county officer such deputies as may be required to do the business of the office, at such salary as they may designate, the officer has the absolute right to determine the personnel of such deputies as may have been allowed.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered September 18, 1913, upon sustaining a demurrer to the complaint, dismissing an action to recover salaries. Reversed.

[1]Reported in 143 Pac. 881.

*George Livesey, N. K. Staley,* and *H. C. Thompson,* for appellant.

*Frank W. Bixby* and *W. A. Martin,* for respondents.

MAIN, J.—This action was instituted by L. A. Thomas, as assignee, for the purpose of collecting salaries alleged to have been earned by three deputy sheriffs. The second amended complaint, aside from the formal parts, states in substance the following facts: At the general election held on November 5, 1912, the plaintiff was re-elected sheriff of Whatcom county for a period of two years. On January 13, 1913, he qualified as sheriff for this, his second term, and caused to be filed in the office of the auditor of Whatcom county a certificate appointing L. J. Flanagan, Wilson Stewart, and Emery Hess as deputy sheriffs for the term of two years, commencing on that date. On this same date, the members of the board of county commissioners, within three hours after the time when they had assumed the duties of the office of the board, and without any investigation as to the necessity for the employment of deputies in the sheriff's office, and without any notice to the sheriff, and without giving the plaintiff an opportunity to be heard, and without making any findings as to the necessity of deputies in the office of the sheriff of Whatcom county, and without exercising any discretion in the matter, adopted the following resolution:

"Whereas, the supreme court in interpreting the statute of the state of Washington has said that it is the duty of the county commissioners to not only fix the salaries of all deputy county officers, but also to exercise their discretion in the need and necessity for the services of such deputies; and

"Whereas, it is of the utmost importance that there should be perfect harmony between the office of the sheriff and that of the county attorney, to the end that all law violators may be effectually and economically prosecuted; and

"Whereas, L. J. Flanagan, the chief deputy of the sheriff's office, has not been, and is not now, working in harmony with the office of the prosecuting attorney, and is not trusted by

the prosecuting attorney in developing evidence in criminal cases, especially for violations of the liquor laws; and

"Whereas, Emery Hess and Wilson Stewart, also deputies in the office of the sheriff, are disposed to follow the leadership of the said chief deputy in opposition to the efforts of the prosecutor, and are not working in harmony with the office of the prosecuting attorney; and

"Whereas, it is the belief of the board of county commissioners that the services of said three present deputies, to wit: L. J. Flanagan, Emery Hess, and Wilson Stewart, are not conducive to the best interests of Whatcom county, and their services are not needed or necessary, now,

"Therefore, be it resolved, by the board of county commissioners of Whatcom county, Washington, in regular session assembled, that we do not approve of said deputies and that from and after this date their salaries as such deputies shall cease, and that Whatcom county will not hereafter be responsible for any salary for services performed by said individuals as deputy sheriffs of Whatcom county, and

"Be it further resolved that the clerk of this board shall forthwith serve a copy of this resolution upon L. A. Thomas, sheriff of Whatcom county.

"Dated this 13th day of January, 1913.

                              "C. B. Legoe,
                                "Chairman of the Board.
                     "_____

                                "County Commissioner.
                     "Henry Shagren,
                                "County Commissioner."

No other action was taken by the board relative to the number and salaries of the deputy sheriffs of the county. A copy of this resolution was immediately served upon the plaintiff as sheriff of Whatcom county. Thereupon he went before the board on this 13th day of January, 1913, while the board was in open session, and orally stated that he desired to know whether the board intended to allow him any deputies or assistants in the conducting of his office. In response to this inquiry he was informed orally by C. B. Legoe and Henry Shagren, two of the commissioners, that they did not intend in any way to hamper him in the conduct of

his office, and that the board was willing to allow and pay salaries to three deputies and one jailer, and that the plaintiff could appoint any one a deputy except the three persons named. Notwithstanding the entry of the resolution by the board, the plaintiff at all times permitted to be in full force his commission appointing Flanagan, Stewart, and Hess.

In order to conduct the business of the sheriff's office in the county, it was necessary to have three competent deputies. Pursuant to the appointment, the three persons named continued to act as deputy sheriffs at all times during the months of January, February, and March, 1913. On the 31st day of January, 1913, the plaintiff filed with the board of county commissioners the payroll of his office for that month. This payroll included the salaries of the deputies mentioned, to wit, Flanagan, $100, Stewart, $75, and Hess, $75. On February 3, 1913, the board refused to allow the payroll for the salaries of these deputies from and after January 13, 1913, but did allow the payroll up to that date. On the same day, the plaintiff presented and filed with the board a claim for expenses incurred by his office. This claim showed the expenses incurred by the three deputies in the performance of their duties, as follows: Flanagan, $16.80; Stewart, $21.35; and Hess, $17.45. The board allowed the claim for the expenses incurred by the deputy sheriffs. On February 28, 1913, the plaintiff presented his payroll for that month, which included the same salaries for the same deputies. The board again refused to allow the payroll for the salaries, but did allow the claim for the expenses incurred by such deputies in the performance of their duties. On March 31, 1913, the payroll was presented for that month, and was likewise refused, but the expenses were allowed.

The above facts do not include those stated in paragraphs three, four, and eleven of the second amended complaint. The facts stated in these three paragraphs are that the plaintiff, on November 8, 1910, was elected to the office of sheriff of

Whatcom county, and qualified as such officer and entered
upon his duties on the 9th day of January, 1911, and con-
tinuously thereafter during the years 1911 and 1912 acted
in such official capacity.  During all of this time the plain-
tiff employed three deputies and one jailer, this being the
amount of help necessary to conduct the business of his of-
fice.  The deputy sheriffs which he had in his employ during
this time were L. J. Flanagan, Wilson Stewart, and Emery
Hess.  The salaries fixed by the board of county commis-
sioners of Whatcom county and paid to these deputies dur-
ing the year 1912 were, per month, Flanagan, $100, Stew-
art, $75, and Hess, $75.  No formal order was ever made
and entered of record by the board of county commissioners
finding the necessity for three deputies in the sheriff's office
and fixing the salaries during the years 1911 and 1912.  The
board, however, during this period, audited and allowed pay-
rolls of the office of the sheriff each month, in which the sal-
aries of the three deputies named were for the amounts speci-
fied above.  The board, for a period of more than eight years,
has allowed and paid salaries for assistants in the conduct of
the sheriff's office to three deputies and one jailer.  The
amount allowed during this time was practically the same
as the salaries allowed the deputies during the years 1911
and 1912.  During this time, however, no formal order was
made or entered by the board finding the necessity for the
employment of three deputy sheriffs and one jailer, and fix-
ing their compensation, except that the sheriff during this
time filed with the county auditor a certificate showing the
appointment of the deputies employed in his office, and the
board of county commissioners ordered and allowed the pay-
rolls upon such certificate of appointment.  During all the
time mentioned, assistants and deputies have been employed
in each and all of the other county offices of Whatcom county,
and the board of county commissioners has never made or
entered any formal order finding the necessity for such dep-
uties or assistants or fixing their compensation.  The depu-

ties in all the county offices have been paid salaries in accordance with the payrolls presented for the various county offices, and audited and allowed by the board of county commissioners. The salaries claimed for the deputy sheriffs mentioned for the months of January, February, and March, 1913, are the same as had previously been allowed to these deputies continuously for a period of two years prior to January 13, 1913, by the board of county commissioners.

A motion was interposed to strike from the second amended complaint paragraphs three, four, and eleven. This motion was granted. A demurrer was then filed and sustained. The plaintiff refused to plead further, and elected to stand upon his second amended complaint. Judgment was entered dismissing the action. The plaintiff appeals.

There are three questions in this case: First, Had the board of county commissioners, by its conduct prior to January 13, 1913, found that three deputies were necessary to the proper conduct of the sheriff's office, and fixed their salaries? Second, If the board, by a course of conduct, had determined that three deputy sheriffs were necessary, and had fixed the salary of the chief deputy at $100 per month, and each of the others at $75 per month, was this finding of the board abrogated by the resolution passed on January 13, 1913? And third, What are the respective functions of the board of county commissioners and the duly elected and qualified sheriff as to the number, the salaries of, and the persons to be named deputy sheriffs?

I. The first question is whether the board of county commissioners, prior to January 13, 1913, had, by a course of conduct, found that three deputy sheriffs and one jailer were necessary to the proper conduct of the sheriff's office. No resolution to this effect had been passed by the board and entered in the minutes. If the fact be that there was such a finding, it must be by reason of the acts of the board from which it may reasonably be inferred that such was the finding. There being no record in the minutes upon the sub-

ject, it became a fact to be proved by evidence, such as any other fact may be proved. In *Robertson v. King County,* 20 Wash. 259, 55 Pac. 52, the board of county commissioners had informally authorized certain road work. After the work had been done, an action was brought to recover for the same. The trial court instructed the jury that if the work had been authorized in an irregular manner, that a recovery might be had, and that, in the absence of a record upon the subject of what the board had done, it could be proved by testimony, as any fact is proved that anybody knows. This court, in passing upon the instruction, said:

"We cannot see, as asserted by the appellant, that this instruction assumes any fact which was to be proven in the case, and we think that it states the law. It is not the fault of those who perform services for the county that the county keeps no record of the authorization, and it would be unjust to hold such persons responsible for the negligence of the commissioners or their failure for any reason to keep such record, and what was in fact done may be shown by evidence *aliunde* the record, to have been done under all authority."

If the facts stated in those paragraphs of the complaint which were stricken are true, the board of county commissioners, for a period of two years prior to January 13, 1913, had monthly audited and allowed the sheriff's payroll for three deputies and one jailer. The salaries allowed the deputies during this time were the same as those involved in this action. It is also alleged that, for a period of about eight years, the board of county commissioners had audited and allowed payrolls of the sheriff which included three deputies and one jailer, and that the board of county commissioners had not formally by resolution entered in its minutes determined the number of deputies in any of the county offices nor fixed their salaries, for a number of years prior to January 13, 1913, but had continuously audited and allowed payrolls for the deputies in such offices. If these facts be true, it must necessarily follow as a reasonable inference that the board

of county commissioners had determined that three deputies and one jailer were necessary to a proper conduct of the sheriff's office; otherwise the board would not have continuously, month after month for a series of years, audited and allowed payrolls for their services. Indeed, this is recognized by the respondents in their brief, where it is said:

"It is fair to presume that while no formal order fixing salaries for former sheriffs appears in the minutes of the boards for the same periods, previous understandings whereby the number of deputies were agreed upon had been reached."

II. Since the acts of the board prior to January 13, 1913, show that three deputy sheriffs and one jailer were necessary to the proper conduct of the sheriff's office, the next question is whether that finding had been abrogated or set aside by the resolution, a copy of which appears in the facts stated. The board of county commissioners act in an administrative or executive capacity in the management of the affairs of the county. This board has a continuous existence. While the membership of the board may change from time to time, the board continues notwithstanding the change in the individuals who compose it. If there were a finding by the board that three deputy sheriffs and one jailer were necessary to the proper conduct of the sheriff's office, this finding would not be abrogated by a change in the personnel of the board. It was the act of the board, and would continue to be such until it had been changed, altered, or abrogated by the board. 11 Cyc. 380; *Board of Com'rs of Pulaski County v. Shields*, 130 Ind. 6, 29 N. E. 385.

In the resolution referred to, after reciting that Flanagan, as chief deputy, had not been and was not then working in harmony with the office of the prosecuting attorney; that Hess and Stewart, assistant deputies, were disposed to follow the leadership of the chief deputy and were not working in harmony with the office of the prosecuting attorney; and that the services of the three deputies named were not conducive

to the best interests of Whatcom county and are not needed or necessary, it was resolved "that we do not approve of said deputies and that from and after this date their salaries as such deputies shall cease, and that Whatcom county will not hereafter be responsible for any salary for services performed by said individuals as deputy sheriffs of Whatcom county." This resolution, enlightened by the recitals in the preamble thereto, makes it as plain as language well can, that the object of the resolution was not to determine that three deputies were not necessary, or that the salaries of such deputies as previously fixed had been changed or altered. Its primary purpose was to prevent the sheriff from appointing the three deputies named. This is further made manifest by the statements of the two members of the board to the sheriff, that the board was willing to allow and pay salaries to three deputy sheriffs and one jailer, and that he could appoint any one as deputy, except the three persons named. That the board did not intend to determine that three deputies were not necessary is further evidenced by the fact that it subsequently allowed the claims for expenses which these deputies had incurred in the performance of their respective duties. The resolution did not change the previous finding, as established by the acts of the board, that three deputy sheriffs were necessary; neither did it change the salaries as previously determined.

III. Did, then, the board of county commissioners have a right to determine that the sheriff could not appoint the three persons named? In Rem. & Bal. Code, § 4032 (P. C. 115 § 7), which enumerates the county officers, and covers the subject of salaries of deputies, it is provided:

"And in all cases where the duties of any office are greater than can be performed by the person elected to fill the same, said officer may employ, with the consent of the county commissioners, the necessary help, who shall receive a just and reasonable pay for services. The officer appointing such deputies or clerks shall be responsible for the acts of such appointees upon his official bond."

In Rem. & Bal. Code, § 4065 (P. C. 115 § 71), it is provided that the salary allowed a county officer shall be full compensation for all services rendered by such officer, with the proviso:

"That in case the salaries herein provided for are, in the judgment of the board of county commissioners, inadequate for the services required of the officers named herein, then the said board of county commissioners may allow such officer a deputy, or such number of deputies as, in their judgment, may be required to do the business of such office in connection with the principal, for such time as may be necessary, and at such salary as they may designate; . . ."

In *Dillon v. Whatcom County*, 12 Wash. 391, 41 Pac. 174, this court had occasion to consider these statutory provisions, the question being what were the respective functions of the county officer who needed deputies, and the board of county commissioners, with respect to the number of deputies, the salaries to be paid, and the persons to be appointed. In that case, three things were determined: First, that the number of deputies was to be determined by the board; second, that the salaries were to be fixed by the board; and third, that the officer had the right to determine who the deputy, assistant, or clerk should be. It was there said:

"It is contended by the respondent that these two sections [General Statutes, §§ 2973, 3003] should be construed *in pari materia;* but even construing them thus, it would seem that the statute went no further than to allow the officer to name the employee, when it had been determined by the board of commissioners that such employment was necessary. Inasmuch as the officer is responsible on his bond for the delinquencies of the appointee, this is no more than a fair provision of the law. But we think that it cannot go beyond this. The whole question of employment outside of the person of the employee seems to be submitted to the judgment of the board of county commissioners by language which is inconsistent with any other thought than that of direction by the commissioners. In the first place, it provides that if the salary, *'in the judgment of the board,'* is inadequate; and as indicating the vesting of discretion no

stronger words could be used. Again, 'the said board of county commissioners may allow such officer a deputy.' The word 'allow' naturally conveys the idea of permission upon the part of the county commissioners; not of consultation or agreement or a division of responsibility, but purely a permission. Again, the law provides further that as to the number of these deputies the judgment of the board of county commissioners is to be exercised, and it specially provides that the salary of such help shall be such a salary as the board may. designate."

It is true the county in that case was held not liable. But the facts there are very different from those in the present case. There the board of county commissioners had, by formal resolution entered in its journal, determined that no clerks should be employed in certain of the county offices, and had fixed the salary of the deputy in each at the sum of $5 per month. Notwithstanding this resolution, and in violation thereof, the county auditor employed certain clerks and a deputy at a salary greater than $5 per month. The commissioners refused to audit and allow his payroll. Action was brought against the county, claiming that the services of the clerks and the deputy hired were necessary to the proper conduct of his office. There was there no attempt on the part of the board of commissioners to determine who should or should not be appointed a deputy in the clerk's office. If a deputy were appointed by the auditor, his salary was fixed at the sum of $5 per month. In the present case, the board attempted to determine that certain persons should not be appointed deputies in the sheriff's office. In the *Dillon* case, the board in finding that no clerks were necessary and fixing the salary of the deputy, was exercising powers conferred upon it by statute. In the present case, the board, in attempting to determine that certain persons should not be appointed deputy sheriffs, was invading the power conferred by statute upon the sheriff.

Our conclusion is, first, that the facts stated in the three paragraphs of the second amended complaint stricken show

a course of conduct which fixed the number of deputies and determined their respective salaries; second, that the resolution of January 13, 1913, did not abrogate or change the previous finding of the board; third, that the board has the right to determine the number of deputies in county offices and fix their salaries; fourth, that the officer in whose office the deputies are to serve, being responsible on his bond for their conduct, has the absolute right to determine the personnel of such deputies; fifth, that the court erred in striking the three paragraphs mentioned from the complaint; and sixth, that the second amended complaint, with the paragraphs stricken included therein, stated a cause of action.

The judgment will be reversed, and the cause remanded for further proceedings.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.