[No. 39548.    Department Two.    November 30, 1967.]

KING COUNTY, *Appellant,* v. UNITED PACIFIC INSURANCE
COMPANY *et al., Defendants,* PAUL FRANK BONNELL,
*Respondent.**

*Charles O. Carroll, James E. Kennedy,* and *William L.
Paul, Jr.,* for appellant.

*Wettrick, Toulouse, Lirhus & Hove* and *Arnold J. Barer,*
for respondent.

*The Attorney General* and *Kenneth R. Ahlf, Assistant,*
amici curiae.

LANGENBACH, J.†—This is an action against respondent
Bonnell as judge of the Roxbury District Justice Court

*Reported in 434 P.2d 554.

†Judge Langenbach is serving as a judge pro tempore of the Su-
preme Court pursuant to Art, 4, § 2(a) (amendment 38), state constitu-
tion.

together with certain employees of that court and their official bond as defendants. The county sought damages for unfaithful performance of their duties in failing to account for certain funds found missing in an audit by the State Auditor's office, Division of Municipal Corporations.

Respondent denied that he had any statutory duty to make deposits or in any way to account for the missing funds. He alleged that other court personnel handled these funds for which he was not accountable. He also moved for a summary judgment of dismissal. After a hearing and argument this motion was granted. The appeal followed.

Respondent Bonnell was a duly elected justice of the peace. Under the 1961 Justice Court Act (RCW 3.30 *et seq.*), he became the judge of the Roxbury District Justice Court. In May 1966, an audit was made of that court's funds and a shortage was discovered. Thereafter appellant filed claims against respondent's bonding company for the loss.

The action was first filed against the bonding company for the respondent's unfaithful performance of duty to supervise the employees who handled the funds of the district court. Respondent then petitioned for the right to intervene and filed a complaint for declaratory relief. An amended complaint was then filed against respondent alleging that he refused faithfully to perform the duties of his office in that he failed and refused to deposit funds received by the district court in the course of its business, said public officer having the statutory duty to manage the deposit daily of all funds received by said court.

At the time of argument the trial court ruled that respondent could only be held accountable for any moneys coming into his hands personally, as distinguished from any received by court employees (by virtue of their official position). The court also held that there was a distinction between a justice of the peace and the judge of the district justice court. As such the respondent was not accountable for all funds coming into his court which funds did not come into his personal possession or custody.

Appellant assigned error to the following findings of fact of the trial court:

1. A justice of the peace is not an officer within the strict accountability provisions of the Constitution, Article 11, Section 5.

2. A justice of the peace is not a county officer within the provisions of RCW 36.16.050 and RCW 36.16.070 and therefore is not subject to the accountability provisions therein prescribed.

3. A justice of the peace is not an officer within the terms of RCW 3.34.090 such as is accountable for all funds coming into his court because Roxbury District Justice Court is an inferior court and is separate and apart from justices of the peace.

4. A justice of the peace is not a public officer who has any duty to perform any of the duties incident to all of the finances of a justice court under the terms of RCW 43.09.240.

This action, in essence, is for a construction of the terms and provisions of the 1961 Justice Court Act (RCW 3.30 *et seq.*).

Article 4, section 1 of the Constitution of the State of Washington provides:

The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.

RCW 3.30.030 provides:

The judges of the justice court of each justice court district shall be the justices of the peace of the district elected or appointed  . . . .

Under this provision respondent, who was the elected justice of the peace, became the judge of the Roxbury District Justice Court. The former justice of the peace disappeared and was embodied in the new district justice court of which the justice became the judge.

RCW 3.54.020 provides:

The justice court shall prescribe the duties of the clerk and deputy clerks. Such duties may include the power to:

(1) Accept and enter pleas;

(2) Receive bail as set by the court;

(3) Set cases for trial;

(4) Administer oaths.

(It is interesting to note that nothing is said therein as to their duties to receive, disburse or deposit district court funds.)

RCW 3.34.090 provides:

The county commissioners shall provide for the bonding of each justice of the peace, justice of the peace pro tempore, justice court commissioner, and court employee, at the expense of the county, in such amount as the county commissioners shall prescribe, conditioned that each such person will pay over according to law all moneys which shall come into his hands in causes filed in his court. Such bond shall not be less than the maximum amount of money liable to be under the control, at any one time, of each such person in the performance of his duties. Such bond may be a blanket bond.

This section provides for a bond for the justice of the peace, who in this instance is also the district justice court judge.

The Justice Court Act does not require or compel the appointment of any clerk or other officer in the district court. But each such clerk is the appointee of the district justice court judge, a part of whose duties the clerk is obliged to perform. (These duties may be entirely performed by the district justice court judge himself.)

RCW 3.62.020 provides:

All fees, fines, forfeitures and penalties assessed and collected by justice *courts*, . . . shall be remitted by the justice *court* to the county treasurer at least monthly, together with a financial statement as required by the division of municipal corporations, noting the information necessary for crediting of such funds as required by law. (Italics ours.)

This refers to the responsibility of the justice *court* and not to that of a subordinate clerk.

It is respondent's contention that the 1961 Justice Court Act places all duties on the district justice court as a separate and distinct entity, and these duties become the re-

sponsibility of the justice court employees who perform them. RCW 3.62.020 prescribed that all moneys collected by the justice *court* shall be remitted by the justice *court* to the county treasurer. Respondent thus contends that since the moneys in this case were paid to the court clerk, the clerk and *not* the judge, has the responsibility to account for these funds. However, the section cited, *supra,* pertaining to the duties of a clerk does not refer in any manner to the clerk's handling of any funds.

Often in statutory drafting the words "court" and "judge" are used interchangeably. The court in *Broadfoot v. City of Florence,* 253 Ala. 455, 45 So. 2d 311 (1950), stated at 457:

> But the words "judge" and "court" are frequently used in statutes as synonymous and convertible terms and whether an act is to be performed by one or the other is generally to be determined by the character of the act rather than by such designation.

To the same effect see *State ex rel. Harp v. Vanderburgh Circuit Court,* 227 Ind. 353, 85 N.E.2d 254, 11 A.L.R. 1108 (1949); *Levey v. Bigelow,* 6 Ind. App. 677, 34 N.E. 128 (1893).

The general rule of statutory construction is stated in 20 Am. Jur. 2d *Courts* § 3 at 388-89 (1965):

> The words "court" and "judge" are frequently used in statutes as interchangeable terms, and in construing a statute using the word "court," the legislative intention, as understood by the court called upon to decide the question, is controlling as to whether reference is made by the statute to a court, to a judge, or both to a court and a judge. Whether a function referred to in a statute using either the term "court" or the term "judge" is to be performed by the court or by the judge is generally to be determined by the character of that function rather than by the word used by the statute. (Footnotes omitted.)

Treatment of the word "court" in Bouvier's Law Dictionary (3d rev., 8th ed. 1914), at 695 is as follows:

> The one common and essential feature in all courts is a judge or judges—so essential, indeed, that they are even called *the court,* as distinguished from the accessory and

subordinate officers; Michigan Cent. R. Co. v. R. Co., 3 Ind. 239; McClure v. McClurg, 53 Mo. 173; . . . .

■ The district justice court, which we determine is the judge himself, is obligated to make monthly remittances of all funds coming into its possession. Inasmuch as this is the primary responsibility of the district justice court (the judge therein), the judge becomes accountable for its proper remittance. The law does not require the use of a justice court clerk, and one is not appointed unless the duties of the judge are such that additional assistance is required. In such a case the judge may delegate such functions of the court as he in his judgment and discretion deems necessary.

RCW 3.30.070 provides:

Each justice court shall keep uniform records of each case filed and the proceedings had therein including an accounting for all funds received and disbursed.

Here again there is nothing which indicates that such services were to be performed by any other employee of the district justice court than by the judge himself. The employment of other employees was at his own choice and judgment.

RCW 3.54.020, *supra,* provides that the justice *court* shall prescribe the duties of the clerk and deputy clerks. In the performance of his duties as such district justice court judge. It was the respondent himself who prescribed the job qualifications of justice court commissioner, chief clerk and chief deputy.[1] Each was to perform a portion of the

---

[1] Respondent furnished the King County Board of County Commissioners with the following job descriptions:

"Justice Court Commissioner (One person appointed) $600.00 per month.

"Has authority to interview all complaining witnesses, accept and verify complaints for misdemeanors and gross misdemeanors, issue all warrants and summons, and set bail upon such offenses. Assumes responsibility for prisoners confined in jail and arranges with jail for delivery of such persons to court for court appearances; issues Orders of Release to jail and authorizes issuance of all personal recognizance bonds. Sets arraignment, criminal and traffic calendars; takes minutes

duties which the act provided should be performed by the district justice court (the judge himself).

in court three days a week. Issues and signs all checks on court's banking accounts. Prepares for Judge's approval all forms used by Court, in conformance with applicable statute or procedure. Selects, secures assent and compiles list of jurors quarterly. Prepares requisitions and vouchers for obtaining court supplies and maintains record of expenditures in conformity with allocations of budget. Does all secretarial work for court, including special reports. Assumes responsibility of requirements of Chief Clerk, Chief Civil Deputy, and Chief Traffic Violations Bureau Deputy.

"Chief Clerk (One person appointed) $490.00 per month.

"Assumes responsibility of office manager, which includes initial interviewing of new employees, training new employees and assignment of clerks and deputies specific duties. Reconciles cash; prepares bank deposits; prepares required financial accounting reports to County and State agencies; balances all transcript pages and check books at end of month; processes N.S.F. checks; assumes responsibility for their collection. Maintains personnel records relative to attendance and absences, sick leave, retirement, medical plan claim forms, vacation periods. Prepares monthly payroll. Introduces new and/or alters existing clerical procedures to handle changes instituted by legislation. Assumes all the responsibility of requirements of Chief Civil Deputy and Chief Deputy of Traffic Violations Bureau.

"Chief Deputy, Traffic Violations Bureau (One person appointed) $470.00 per month.

"Processes all Uniform Traffic Citations filed by law enforcement agencies. Secures and enters on parking citations the name of the registered owner; sends notification of filing of citation and violator's copy of said citation to those cited subsequent to accident investigations; prepares and mails all delinquent payment notices, including five-day notice, notice of impending issuance of warrant; grants all extensions of time for payment; segregates and prepares intitial file on offenses involving mandatory trials, or on citations where request for trial has been made by violator. Distributes all disposition reports to Department of Licenses, State Patrol and King County Sheriff. Accepts all cash or checks in payment of fines or forfeitures and issues receipts therefor; balances cash box daily. Answers all inquiries by telephone, in person or by mail with respect to traffic violations. Issues subpoenas and notifies all interested parties of trial date after calendar has been prepared, including officer, complainant, witnesses, bonding companies, Liquor Control Board (when applicable), and attorneys; maintains record of partial payments on fines and takes appropriate action when delinquent; maintains outstanding warrant registry and reviews periodically to determine status of warrants. Maintains alphabetical index of

The history of the Justice Court Act legislation disclosed that originally the district justice court was to appoint his clerk and deputy clerks as required. This was amended so that the county commissioners were to make these appointments. Senate Journal, 37th Legislature (1961) at 790. This section was later vetoed by the Governor on the basis that the judiciary was a separate and independent branch of government and such appointments by the county commissioners might well interfere with the independent discharge of duties of the justice of the peace (district justice court judge). Senate Journal, 37th Legislature (1961) at 1211. These appointments, therefore, became the prerogative of the district justice court judge.

Respondent chose to delegate a part of his duties to such clerks so far as the financial affairs of his court were concerned. By reason thereof these clerks became his servants and for their official actions he became legally liable and responsible. Had it been meant to be otherwise, the legislature by apt language could have so provided. The clerk is not an independent, but a subordinate employee of the court (the judge thereof) which still remained responsible and liable for its actions performed by its employees in its behalf.

Prior to the 1961 Justice Court Act, justices of the peace were elected in various precincts. Consolidation thereof was impossible. They were individuals serving as such inferior judicial officers.

In the 1961 act this was changed. It became possible to establish in each county certain justice court districts. The judges of the justice court in each justice court district were the justices of the peace elected or appointed therein. Each justice court district might comprise several precincts and in some instances might include an entire county as said act contemplated and provided. King County was

those forfeiting bail; maintains bail forfeiture docket book. Searches docket book and prepares weekly report to newspapers of preceding week's court cases, including name, address, violation, fine and penalties other than fines."

made into justice court districts and several justices of the peace became district justice court judges thereafter. The justice of the peace was the only *mandatory* officer required by the act in such justice court districts. On his shoulders rested the responsibility for the administration of the financial affairs of his court. Because of the possible increase of judicial business in such districts, the legislature enacted provisions whereby subordinate employees might be employed by the judge to assist him in the execution of the functions of such courts. But no place in said act does it appear (nor can it necessarily be inferred or implied) that the employment of such employees in any wise relieved the district justice court judge of his own responsibility for the proper conduct of the functions of his office. He might, but need not, employ such clerks as he deemed necessary under the exigencies of his office. He was given the privilege of prescribing the duties of such subordinates. This he did. They were his employees and responsibility and he might hire and fire them at will. They were there to assist him in the administration of his office. They were not to supersede or displace any of his functions. He was still their overseer in order to observe whether the duties of his office were properly managed and conducted.

The respondent was not separate and apart from the district justice court judge or the court—in fact he was the *court* which could only function through his personal activities. Since he delegated a part of his official duties to his subalterns they became in effect his alter ego; what they did were his actions; their shortcomings were his shortcomings. By his failure to supervise and check their activities in financial matters and thus to permit such shortages to occur, the justice of the peace as the district justice court judge (the respondent himself) incurred the liability for a proper financial accounting of the funds received by the district justice court. The trial court erred in granting respondent's motion for summary judgment and a judgment of dismissal.

Accordingly, the judgment is reversed and the case remanded for further proceedings consistent with the view hereinabove expressed. It is so ordered.

FINLEY, C. J., HUNTER, HAMILTON, and NEILL, JJ., concur.

May 8, 1968. Petition for rehearing denied.