Argued and submitted March 10, affirmed May 7, petition for review denied September 23, 1997 (326 Or 57)

In the Matter of the Legality of Certain
Employment Contracts Between Klamath County
and County Employees.

BOARD OF KLAMATH COUNTY
COMMISSIONERS,
*Respondent,*

*v.*

SELECT COUNTY EMPLOYEES,
*Defendants,*

*and*

Dennis J. ENGLEHARD,
*Appellant,*

*and*

Thomas W. SPENCER
and Wes Sine,
*Intervenors below.*

(95-03694-CV; CA A92300)

939 P2d 80

Mark D. Clarke argued the cause for appellant. With him on the briefs was Frohnmayer, Deatherage, Pratt, Jamieson & Clarke, P.C.

William F. Gary argued the cause for respondent. With him on the brief were Judith Giers and Harrang Long Gary Rudnick P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

Intervenor, Dennis Engelhard, appeals from a judgment declaring his employment contract with plaintiff, Board of Klamath County Commissioners, invalid and unenforceable. ORS 33.720(4). The question is whether the outgoing Board of Commissioners, by contract, can prevent the incoming Board of Commissioners from terminating Engelhard—the county's Director of Personnel—except for death, disability or cause. We affirm.

The three-member Board of Klamath County Commissioners (Commission) is the governing body of Klamath County. Commissioners each serve "staggered" four-year terms: two commissioners are elected in one biennium; one, the next biennium. In 1994, the Commission consisted of Wes Sine, Edwin Kentner and F. Jean Elzner. Sine and Kentner, whose terms expired at the end of that year, stood for reelection in November 1994. They were defeated by challengers Clifton McMillan and David Henzel, who took office in January 1995. Elzner, the third commissioner, whose term did not expire until 1996, continued to serve.

In December 1994, the outgoing Commission (Sine, Kentner and Elzner) executed[1] an employment contract with Engelhard, the Klamath County Director of Personnel. That contract was silent as to the term of Engelhard's employment. By its express language, however, the contract prohibited the incoming Commission from terminating Engelhard except for death, disability or cause. The contract required Engelhard to perform the following duties, which were "not meant to be all inclusive or restrictive":

". Direct[ ] County-wide personnel programs in accordance with rules, policies and procedures and Federal and State law; * * *.

---

[1] We need not decide whether the Commission properly executed the employment contract. The trial court concluded that it did not, because "[t]he simple act of the signing of a contract by a commissioner is no more significant than pulling someone in off of the street to sign the contract unless the Board of Commissioners had made the decision at a public meeting authorizing the County to enter into the contract," and because "[n]o such meeting or vote was held by the Commission in regard to th[is] contract[ ]." Engelhard assigns error to that conclusion, but our disposition of his appeal makes it unnecessary to address that assignment.

".   Interpret[ ] County rules, policies and procedures to supervisory officials and to County employees in connection with personnel transactions and departmental programs; * * * recommend[ ] new and revised policies and procedures and regulations.

"* * * * *

".   Direct[ ] data collection surveys and coordinate[ ] with vendors for the County compensation and employment benefit plans; evaluate[ ] data; make[ ] appropriate recommendations to the Board of County Commissioners.

".   Direct[ ] job classification studies of County positions to determine appropriateness of allocations; determine[ ] proper pay classification for new positions or positions requiring classification changes.

".   Administer[ ] the County employee labor relations program; negotiate[ ] collective bargaining agreements; approve[ ] tentative bargaining agreement provisions; interpret[ ] all collective bargaining agreements.

"* * * * *

".   * * * [C]onfer[ ] with department heads, supervisors, employees and officials from other agencies to assess training needs, resources and priorities.

"* * * * *

".   Consult[ ] with supervisory personnel on all employee disciplinary actions; process[ ] and/or administer[ ] disciplinary actions and grievances procedures in accordance with union agreements, County policy and law.

"* * * * *

".   Plan[ ], coordinate[ ] and manage[ ] the County's Risk Management program * * *.

"* * * * *

".   Perform[ ] special assignments for the Board of County Commissioners * * *."

The contract also required Engelhard to "perform all reasonable duties and accept all reasonable responsibilities incidental to the position of Director of the Department of Personnel." In addition, the Klamath County Personnel Policy and Procedure Manual, which the outgoing Commission adopted

in December 1994, provides, in part, that with respect to the "recruiting and selecting of employees for all positions," the Director of Personnel must "[s]creen incoming applications or resumes to identify candidates who meet the minimum qualifications for the position" and, before any employee is hired by the county, must "certif[y] * * * that the applicant is qualified." The personnel manual also provides that, "[w]hen an employee is released, separated due to a reduction in force, or discharged, * * * approval will be required * * * of the Personnel Director."

■    Shortly after McMillan and Henzel took office, the Commission terminated Engelhard's employment and commenced statutory proceedings, pursuant to ORS 33.710(2)(d), to determine the validity of Engelhard's employment contract. The trial court ruled that the employment contract was "invalid and unenforceable." According to the court, the "case law is clear that entering into [the] contract[ ] was attempting to bind a future governing body as to [an] employee[ ] who [was] performing governmental functions, and * * * contracts attempting to do so are not valid."[2]

■    Engelhard assigns error to that conclusion on the ground that, according to Engelhard, "[t]here is no [such] general rule that a county may not bind successor administrations by contracting with employees who perform governmental functions." Engelhard further argues that even if such a general rule does exist, he "was not performing governmental functions," and that the "Klamath County Board of Commissioners is a continuous body * * * and can be neither a predecessor Board [n]or a successor Board." The Commission responds that, as a matter of law, "an elected governmental board does not have authority to enter into an employment contract for the performance of governmental

---

[2] Traditionally, in analyzing municipal corporations, governmental functions have been distinguished from proprietary functions. However, as the Supreme Court observed in *Northwest Natural Gas Co. v. City of Portland,* 300 Or 291, 297-302, 711 P2d 119 (1985), that distinction has been the subject of much controversy and criticism. Nonetheless, the distinction has withstood assaults because it is "useful in some cases," *id.* at 298, and the Supreme Court itself has continued to use the "governmental function" label to resolve issues similar to those presented here. *See, e.g., Graves v. Arnado,* 307 Or 358, 364, 768 P2d 910 (1989) (outgoing elected governing body that entered into contract involving governmental function cannot bind subsequently elected body).

functions that will extend beyond the term of office of the members of the board." The Commission further responds that Engelhard's contract calls for the performance of governmental functions and that "staggered terms notwithstanding, if a majority of the board members' terms expire before the contract expires, the board is without authority to enter the contract." We review *de novo. See* ORS 33.720(1) (determination of legality of municipal corporation's action shall be in nature of proceeding in rem and shall follow practice and procedure of action not triable by right to jury); ORS 19.125(3) (on appeal from judgment in equitable action, appellate court shall try cause anew upon record).

■     Without question, "an outgoing elected governing body of finite tenure which enter[s] into a contract involving a 'governmental' function [can]not bind a subsequently elected body." *Graves v. Arnado*, 307 Or 358, 364, 768 P2d 910 (1989); *see also Miles v. City of Baker*, 152 Or 87, 92-93, 51 P2d 1047 (1935) ("If the work provided for in plaintiff's alleged contract is a governmental function, then the great weight of authority is to the effect that the outgoing council could not bind its successors in such a contract."); *Johnson v. City of Pendleton*, 131 Or 46, 54-56, 280 P 873 (1929) (city possesses no power to enter contract binding city for all time to make annual levy for specific purpose, because "[u]pon matters which are purely governmental in their nature, * * * no legislative act will bind a subsequent Legislature"); *Jacobberger v. School District No. 1*, 122 Or 124, 131, 256 P 652 (1927) (officers of municipal corporation, in exercise of corporation's governmental powers, may not bind municipality beyond terms of their office). Accordingly, we must determine whether Engelhard's employment contract calls for the performance of governmental functions and whether the service of the Commission is of finite tenure.

Contrary to Engelhard's assertion, based on the record in this case the personnel director's contract calls for the performance of governmental functions. By the terms of the contract and the personnel manual, Engelhard is responsible for certifying that all new county employees are qualified and for terminating all county employees. The contract and the personnel manual also require Engelhard to determine the appropriateness of allocations of personnel and to assess the

training needs, resources and priorities of the various county departments. Making those determinations and allocations are functions of the governing body of Klamath County. *See Christensen v. Epley,* 36 Or App 535, 545, 585 P2d 416 (1978), *aff'd in part, rev'd in part on other grounds* 287 Or 539, 601 P2d 1216 (1979) (allocation of personnel and determination of what qualifications are necessary in order to perform particular job involves policy considerations that are discretionary acts of government for purposes of governmental immunity); *Mosley v. Portland School Dist. No. 1J,* 315 Or 85, 92-93, 843 P2d 415 (1992) (school principal's decisions as to number and location of security personnel were "classic policy choices" delegated by school board). Furthermore, the contract requires Engelhard to direct county-wide personnel programs and to interpret the rules, policies and procedures governing those programs as well as to negotiate, approve and interpret all collective bargaining agreements entered into by the county. Finally, the contract requires Engelhard to recommend new and revised policies, procedures and regulations to the Commission. In sum, with respect to personnel, the commissioners have chosen to allow their Director of Personnel to exercise their governmental functions of making policy judgments, ranking and evaluating policy objectives and making choices among competing goals and priorities. *See McBride v. Magnuson,* 282 Or 433, 437, 578 P2d 1259 (1978) (characterizing such activities as "discretionary" for purposes of immunity from tort liability); *see also Stevenson v. State Dept. of Transp.,* 290 Or 3, 14, 619 P2d 247 (1980) (factors pointing toward governmental discretion include level of administration at which decision was taken and evidence of responsibility for policy choices as distinguished from routine decision every employee makes in every action employer takes).

■   Neither do we have any difficulty concluding that the Commission is an elected governing body of finite tenure. When a majority of the members of a governing body must stand for election at the same time, we follow the established rule that prohibits an outgoing governing body from binding a succeeding governing body to a contract that calls for the performance of governmental functions. *See Miles,* 152 Or at 87 (applying rule where all three members of City of Baker

Board of Commissioners stood for reelection, two were defeated, and one was reelected); 28 Or Atty Gen Op 3846 (1957) (concluding that rule would apply where terms of office for five out of seven members of Portland Housing Authority would expire during term of proposed contract). Consequently, we conclude that the provision in Englehard's contract that prevents the incoming Board of Commissioners from terminating him except for death, disability or cause is not enforceable.

Affirmed.