[No. 66415-3. En Banc.]

Argued June 10, 1998.     Decided September 3, 1998.

CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE EASTERN
DISTRICT OF WASHINGTON

IN

JUDY CROSSLER, *Plaintiff*, v. ADALIA HILLE, ET AL.,
*Defendants*.

Talmadge and Madsen, JJ., concur by separate opinion.

*Paul J. Burns*, for plaintiff.
*Perkins Coie*, by *Thomas F. Kingen*, for defendants.

Johnson, J, — The United States District Court, Eastern District of Washington, certified the following question under RCW 2.60:

> Is a district court judge bound by a county personnel handbook, approved by the county and previous district court judges, in her decision to terminate a district court clerk, when the judge has never personally adopted the terms of the handbook?

Order Granting Mot. to Certify to Washington State Supreme Court at 3 (Order). Short Answer: No.

The certified question is very narrow in scope and limited by the record before us. We do not seek to make a broad statement concerning the law of employment relations between district court deputy clerks and judges because we understand the tasks performed by district court deputy clerks vary significantly throughout the state. We also realize employment relationships between district court deputy clerks and judges may differ from the relationship at issue in this question because the nature of the employment relationship often depends upon the size of the county, the size of the court, and the manner in which the judge and district court deputy clerk arrive at their respective positions. We refrain from addressing the wide range of possible employment relationships.

## FACTS

From 1979 through 1992, plaintiff, Judy Crossler, worked as an Adams County employee. For two years, she worked in the Sheriff's office and, until 1992, for the Department of Public Works. Defendant, Adalia Hille, was appointed Adams County District Court Judge in 1992 and was elected to a four-year term in 1993. In 1992, Judge Hille hired Crossler as a district court deputy clerk.

In 1988, the Adams County personnel policy (Handbook) was adopted by the County Commissioners, the Prosecuting Attorney, the Auditor, the Treasurer, the Assessor, the County Clerk, the Superior Court, and the District Courts.[1] The Handbook was signed by the County Commissioners, former Superior Court Judge Gordon Swyter, former District Court Judge Denis Morgan, and Othello District Court Judge Charlotte DuBois.[2] The Handbook includes termination and discipline standards and procedures, and

[1] There are two district courts in Adams County: Othello District Court and Ritzville District Court.

[2] Crossler emphasizes that although the current Superior Court Judge, Auditor, and Treasurer did not sign the 1988 Handbook, they have expressly acknowledged they and their offices are bound by the policy. First, the application of the Handbook to employees of these officials is not at issue. Second, these of-

specifically provides for a pretermination hearing between the employer and employee.

In 1988, while working for the Department of Public Works, Crossler received a copy of the Handbook. Crossler read and understood the contents of the Handbook. Crossler knew the Handbook had been signed by Judge Hille's predecessors and she believed the Handbook applied to all Adams County employees, including those in the Adams County District Courts.

In 1997, Judge Hille terminated Crossler from her position as district court deputy clerk. Crossler requested a grievance hearing before the County Commissioners in accordance with the Handbook. The County Commissioners informed Crossler they had no authority to review Judge Hille's employment decisions. In a letter dated March 24, 1997, the County Commissioners told Crossler that employees of the Ritzville District Court are employees under the direct supervision and management of elected official Judge Hille and "their jurisdiction over the department is limited to wage and wage related matters and working conditions only."

Crossler argues the Handbook governs the outcome of this case. Crossler alleges the Handbook created a contract of employment barring her termination for other than just cause and that any just cause termination must, by contract, be preceded by a termination hearing. Crossler contends the Handbook created a property right in her employment and that her termination, without a hearing, constituted a breach of contract and violated her right to due process under the Fourteenth Amendment of the United States Constitution. Crossler filed her action in the United States District Court, Eastern District of Washington, under 42 U.S.C § 1983. In the order granting the motion to certify the question to the Washington State Supreme Court, the Honorable Robert H. Whaley stated:

[T]he Court has concluded that an issue of fact exists as to

ficials expressly acknowledged the application of the Handbook; Judge Hille did not.

whether Judge Hille complied with the mandatory terms of the personnel policy. However, Defendants' Motion for Summary Judgment will be granted if Judge Hille is not bound to comply with the terms of the policy.

Order at 2-3.

## ANALYSIS

Although Crossler was hired by Judge Hille and was never an employee of Judge Hille's predecessors, Crossler asks us to find the County Commissioners, former District Court Judge Morgan, and Othello District Court Judge DuBois have the authority to bind a sitting judge in the administration of his or her court. Such a finding would require us to deviate from prior case law and statutory authority.

### Ability of Elected Officials to Create Binding Employment Contracts

A. Authority of District Court Judges

District court judges have the authority to prescribe the duties of district court deputy clerks. *King County v. United Pac. Ins. Co.*, 72 Wn.2d 604, 611, 434 P.2d 554 (1967); RCW 3.54.020.[3] Although a judge may individually perform all the necessary duties required to manage a court, a judge is entitled to hire additional employees to assist in a court's administration, but this decision is "at his [or her] own choice and judgment." *King County*, 72 Wn.2d at 609. The ability of a judge to make independent employment deci-

---

[3]RCW 3.54.020 provides that the judge directs the scope of the employment: "The district courts *shall prescribe the duties of the clerk and deputy clerks*. Such duties shall include all of the requirements of RCW 3.62.020 and 3.62.040 as now or hereafter amended and the receipt of bail and additionally the power to:

"(1) Accept and enter pleas;

"(2) Receive bail as set by the court;

"(3) Set cases for trial;

"(4) Administer oaths." (Emphasis added.)

sions has been discussed and decided. In *King County*, 72 Wn.2d at 611, we explained:

The history of the Justice Court Act legislation disclosed that originally the district justice court [judge] was to appoint his clerk and deputy clerks as required. This was amended so that the county commissioners were to make these appointments. Senate Journal, 37th Legislature (1961) at 790. This section was later vetoed by the Governor on the basis that the judiciary was a separate and independent branch of government and such appointments by the county commissioners might well interfere with the independent discharge of duties of the justice of the peace (district justice court judge). Senate Journal, 37th Legislature (1961) at 1211. These appointments, therefore, became the prerogative of the district justice court judge.

As appointees of the judge, clerks perform tasks as assigned and serve at the pleasure of the elected judge. In *King County*, we later stated:

But no place in said act does it appear (nor can it necessarily be inferred or implied) that the employment of such employees in any wise relieved the district justice court judge of his own responsibility for the proper conduct of the functions of his office. He might, but need not, employ such clerks as he deemed necessary under the exigencies of his office. He was given the privilege of prescribing the duties of such subordinates. This he did. *They were his employees and responsibility and he might hire and fire them at will.* They were there to assist him in the administration of his office. They were not to supersede or displace any of his functions. He was still their overseer in order to observe whether the duties of his office were properly managed and conducted.

*King County*, 72 Wn.2d at 612 (emphasis added). The law has not changed. The independence of judges with regard to employment decisions continues to be recognized by this court. Although the case involves a different type of court employee, in *Zylstra v. Piva*, 85 Wn.2d 743, 748, 539 P.2d 823 (1975), the court found that juvenile court probation counselors held:

a dual status: They are employees of the county for purposes of negotiating matters relating to wages . . . . However, *for purposes of hiring, firing, working conditions*, and other matters necessarily within the statutory responsibility of the juvenile court judges, plaintiffs are employees of the court and thus of the State's judicial branch.

(Emphasis added.) The facts of this case fit squarely within the holdings of *King County* and *Zylstra*. We conclude Judge Hille had the authority to make employment decisions concerning the administration of the court.

Despite precedent establishing the independent nature of the court, Crossler argues she is a county employee and either the County Commissioners or the former and current District Court Judges have the authority to set employment policies for current and future court employees. She further argues the voluntary acceptance of the Handbook by the former and current District Court Judges established an expectation and a property interest in the district court deputy clerk position that can be revoked only by a positive action. This argument assumes the County Commissioners or the former and current District Court Judges had the ability to make such a binding employment contract.

## B. Authority of County Commissioners

Absent specific authority to the contrary, a board of county commissioners has no authority to interfere with an elected official's hiring decision. *Osborn v. Grant County*, 130 Wn.2d 615, 623, 926 P.2d 911 (1996). In *Osborn*, the board of commissioners argued it should have some say in the irresponsible hiring decisions of elected officials and pointed to RCW 36.16.070[4] to support its argument. The board argued RCW 36.16.070 expressly required the elected

---

[4]RCW 36.16.070 states: "In all cases where the duties of any county office are greater than can be performed by the person elected to fill it, the officer may employ deputies and other necessary employees with the consent of the board of county commissioners. The board shall fix their compensation and shall require what deputies shall give bond and the amount of bond required from each. The sureties on deputies' bonds must be approved by the board and the premium therefor is a county expense.

official to seek the consent of the Grant County Commissioners before making hiring decisions. We did not agree and held once the board creates and funds the positions, the county officer is the party who names the individuals to fill those positions. *Osborn*, 130 Wn.2d at 622; *see also Thomas v. Whatcom County*, 82 Wash. 113, 124, 143 P. 881 (1914) (once the board has authorized the hiring of deputies in a county office, "the officer in whose office the deputies are to serve, being responsible on his bond for their conduct, has the absolute right to determine the personnel of such deputies . . . ."); *Jackson v. Thurston County*, 127 Wash. 41, 43-44, 219 P. 840 (1923) (the sheriff, being responsible on his official bond for the acts of his deputies, had the right of appointment). The commissioners have the ability to authorize and fund a position, but this authority does not extend to specific personnel decisions. As we stated, "[i]f an official makes a poor hiring decision, the official is accountable not to the board of commissioners, but to the public." *Osborn*, 130 Wn.2d at 624.

In the present case, the County Commissioners have no authority to impose employment policies on a district court judge. Like the commissioners in *Osborn, Thomas*, and *Jackson*, here the County Commissioners have the ability and the obligation to provide funding for the district court deputy clerks, but the County Commissioners do not have the authority to determine the employment policies of the elected official.

We find the Adams County Commissioners are not Crossler's "employer" because they have no connection with Crossler's employment other than to budget money enabling the judge to fill the position of deputy clerk. *See Keenan v. Allan*, 889 F. Supp. 1320 (E.D. Wash. 1995), *aff'd*, 91 F.3d 1275 (9th Cir. 1996). County Commissioners cannot alter the employment status of a judge's employee from "at will" to "for cause" simply by issuing an employment policy

---

"A deputy may perform any act which his principal is authorized to perform. The officer appointing a deputy or other employee shall be responsible for the acts of his appointees upon his official bond and may revoke each appointment at pleasure."

handbook. We have recognized the limited authority of county commissioners in the past and there is no reason to change our position in this case.

## C. Authority of Prior Judge

Crossler argues Judge Hille is bound by her predecessor's voluntary agreement to the terms of the Handbook because Judge Hille never revoked or rescinded the agreement as the "officer" of the district court. Crossler insists Judge Hille's failure to explicitly revoke the "agreement" effectively deprives Crossler of a constitutionally protected property interest without due process of law. Crossler does not explain, or cite authority that would explain, how former Judge Morgan could create a binding future contract between his successor, Judge Hille, and Judge Hille's employee.

In 10A EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 29.101, at 44 (3d ed. 1990) (the McQuillin test), the following is written about the ability of elected officials to form employment contracts beyond their elected term:

> [T]he general rule seems to be that a contract of employment extending beyond the term of the office of the members of a public board . . . is, if made in good faith, ordinarily a valid contract.
>
> However, where the nature of an office or employment is such that it requires a municipal board or *officer to exercise supervisory control over the appointee or employee, together with the power of removal, such employment or contract of employment constitutes exercise of a governmental function, and such contracts must not be extended beyond the life of the board.*

(Emphasis added.)

Using the McQuillin test, we find Crossler's employment was "governmental" because the position required supervi-

sory control by Judge Hille (RCW 2.28.010[5]), Judge Hille retained the power of removal (*see King County*, 72 Wn.2d at 612), and Judge Hille's tenure was for a finite period of time (*see* RCW 3.34.070 (a district court judge serves a term of four years if elected or appointed) and RCW 3.34.100 (an appointed district court judge holds office until the next general election). The McQuillin test has been used by other courts to resolve similar questions.

Specifically, the Oregon Court of Appeals was confronted with a similar question when the outgoing county commissioners attempted to bind the incoming county commissioners to a Director of Personnel, through an employment contract permitting termination for death, disability or cause only. *Board of Klamath County Comm'rs v. Select County Employees*, 148 Or. App. 48, 939 P.2d 80 (1997). The Court of Appeals turned to the Oregon Supreme Court, which had previously stated, "[w]ithout question, 'an outgoing elected governing body of finite tenure which enter[s] into a contract involving a "governmental" function [can]not bind a subsequently elected body.' " *Board of Klamath County Comm'rs*, 148 Or. App. at 53 (some alterations in original) (quoting *Graves v. Arnado*, 307 Or. 358, 364, 768 P.2d 910 (1989)); *see also Miles v. City of Baker*, 152 Or. 87, 92-93, 51 P.2d 1047 (1935) ("If the work provided for in plaintiff's alleged contract is a governmental function, then the great weight of authority is to the effect that the outgoing council could not bind its successors in such a contract."); *Johnson v. City of Pendleton*, 131 Or. 46, 55, 280 P. 873 (1929) (city possesses no power to enter contract binding city for all time to make annual levy for specific purpose, because "[u]pon matters which are purely governmental in their nature . . . no legislative act will bind a subsequent legislature."); *Jacobberger v. School Dist. No. 1*, 122 Or. 124, 131, 256 P. 652 (1927) (officers of municipal corporation, in exercise of corporation's governmen-

---

[5]RCW 2.28.010(5) provides: "Every court of justice has power . . . (5) [t]o control, in furtherance of justice, *the conduct of its ministerial officers*, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto." (Emphasis added.)

tal powers, may not bind municipality beyond terms of their office).

Like the McQuillin test, Oregon requires an inquiry into whether an employment contract calls for the performance of governmental functions and whether the service of the board, governing body, or elected official is of finite tenure. *Board of Klamath County Comm'rs*, 148 Or. App. at 53. In *Board of Klamath County Commissioners*, the court held the outgoing county commissioners could not bind their successors because the commissioners allowed the director of personnel to exercise the county commissioners' governmental functions of making policy judgments, ranking and evaluating policy objectives and making choices among competing goals, and because the board of county commissioners is an elected governing body of finite tenure due to the fact a majority of the board must stand for election at the same time. *Board of Klamath County Comm'rs*, 148 Or. App at 54. The contract that prevented the incoming county commissioners from terminating the director of personnel was found to be unenforceable.

Crossler argues her employment was not "governmental," but was simply clerical. Crossler argues because her employment is not "governmental," former District Court Judge Morgan's acceptance of the Handbook created a contract that extended beyond his elected term and to individuals not a party to the contract. This argument is without merit. Even if Crossler's duties were clerical, she is deemed a "governmental" employee because (1) Crossler was performing tasks for which Judge Hille was responsible; (2) Judge Hille was required to supervise Crossler's employment; (3) Judge Hille was able to terminate Crossler; and (4) Judge Hille's term was for four years. The clerical nature of Crossler's employment is irrelevant to the resolution of this certified question.

We hold that Crossler is an at-will employee of Judge Hille and that neither the Adams County Commissioners, former District Court Judge Morgan, nor Othello District Court Judge DuBois have the authority to bind Judge Hille

to the policies contained in the Handbook. Despite being paid by the county, in this case Crossler is a judicial employee, not a county employee, and therefore is not "protected" by the terms of the county employment Handbook.

The certified question is answered no. Under the facts of this case, Judge Hille is not bound by the county personnel Handbook, approved by the County Commissioners and former and current District Court Judges. Judge Hille never personally adopted the terms of the Handbook and neither the County Commissioners nor former Judge Morgan or Judge DuBois have the authority to create binding employment policies for Judge Hille.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, ALEXANDER, and SANDERS, JJ., concur.

TALMADGE, J. (concurring) — I agree with the majority the answer to the certified question is "no." I write separately to emphasize the reasons for our answer to the certified question relate to the particular circumstances of Ms. Crossler's employment by the Adams County District Court.

Judge Hille was the only judge serving in the Ritzville District Court; that court employed only four people including Ms. Crossler. Ms. Crossler's work included a number of specific duties for Judge Hille, including the handling of bench warrants; making necessary changes and adjustments to cases; maintaining the court's procedure book; inputting all criminal, infraction and civil files; receiving civil money; setting contested and mitigated hearings; and performing bailiff duties. In sum, Ms. Crossler was employed in a small court to perform court duties personal to Judge Hille as the only district court judge on that bench. Under the circumstances, it is inescapable that Ms. Crossler was the personal court staff of Judge Hille and an at-will employee of Judge Hille under the district court act.

I emphasize these facts because the majority's opinion

could be interpreted more broadly than is necessary. Plainly, in larger district courts, employees denominated "deputy clerks" would, for example, be performing nothing more than clerical work and would be objectively viewed as "court generalists" not performing proprietary work as a member of the personal staff of a judge. For such employees, personnel policies could be adopted by the county or by the district court judges collectively of the particular jurisdiction to govern the employment relationship between that employee and the court. That is not the case in the present action.

For staff personal to a judge, that judge must have the discretion to hire and fire staff as that elected judge deems appropriate. Confidentiality in the relationship between the judge and his or her personal staff is essential to the core judicial function. By contrast, staff that is not in such a confidential relationship with a judge should not be subject to a "spoils system" that requires each elected judge, upon his or her election, to reaffirm those portions of the jurisdiction's personnel policy that he or she deems applicable to the court's employees. In a multi-judge jurisdiction, such a process would be unworkable.

Certain general employment-related requirements proposed by the legislative and executive branches of both local and state government must surely apply to judicial employees. Individual judicial fiat, for example, cannot invalidate laws relating to workplace safety, industrial insurance, and discrimination that are applicable to public employees working in the judicial branch of state or local government. The majority's opinion does not go so far, nor should it.

I agree with the majority Ms. Crossler was an at-will employee of Judge Hille in light of the small size of the Ritzville branch of the Adams County District Court and the nature of the duties she performed for Judge Hille. I do not believe our opinion should be read beyond the narrow facts present here.

MADSEN, J., concurs with TALMADGE, J.

Reconsideration denied October 22, 1998.

[No. 07832-7. En Banc.]
Argued May 20, 1998.     Decided September 10, 1998.
*In the Matter of the Disciplinary Proceeding Against*
STEPHEN C. HASKELL, *an Attorney at Law.*